962 F.2d 1528
 22 Fed.R.Serv.3d 1288
 COLORADO INTERSTATE GAS COMPANY, Plaintiff-Counterclaim
Defendant-Appellee,
v.
NATURAL GAS PIPELINE COMPANY OF AMERICA and
NGPL-Trailblazer, Inc.,
Defendants-Counterclaimants-Appellants,
v.
WYOMING INTERSTATE COMPANY, LTD., and the Coastal
Corporation, Counterclaim Defendants-Appellees.
Midcon Ventures, Inc., Counterclaimant.
 No. 90-8046.
 United States Court of Appeals,
Tenth Circuit.
 May 6, 1992.
 
 Gerald M. Stern, Los Angeles, Cal (William H. Brown of Brown & Drew, Casper, Wyo.; Harvey I. Saferstein, James N. Adler, and Steven A. Marenberg of Irell & Manella, Los Angeles, Cal.; J. Curtis Moffatt of Van Ness, Feldman & Curtis, Washington, D.C.; Paul J. Hickey of Hickey & Evans, Cheyenne, Wyo.; Joel I. Klein and Richard G. Taranto of Onek, Klein & Farr, Washington, D.C.; John T. Cusack and Michael P. Padden of Gardner, Carton & Douglas, Chicago, Ill.; Louis Nizer and Paul Martinson of Phillips, Nizer, Benjamin, Krim & Ballon, New York City; Paul E. Goldstein and Paul Korman, Lombard, Ill.; and Charles Alan Wright, Austin, Tex., with him on the brief), for appellants.
 Michael L. Beatty of Colorado Interstate Gas Co., Colorado Springs, Colo. (Rebecca H. Noecker of Colorado Interstate Gas Co., Colorado Springs, Colo.; William C. McClearn, Joseph W. Halpern, Elizabeth A. Phelan of Holland & Hart, Denver, Colo.; Marilyn S. Kite of Holland & Hart, Cheyenne, Wyo.; Rex E. Lee, Carter G. Phillips, Mark D. Hopson, Richard D. Bernstein, Thomas P. Van Wazer, Nancy A. Temple of Sidley & Austin, Washington, D.C.; and J. Kent Rutledge of Lathrop, Rutledge & Boley, Cheyenne, Wyo., with him on the brief), for appellees.
 Before HOLLOWAY and BARRETT, Circuit Judges, and BROWN,* District Judge.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This is the second appeal to this court by defendants, Natural Gas Pipeline Company of America and NGPL-Trailblazer (collectively Natural), following an order of the United States District Court, District of Wyoming, entering judgment in favor of the plaintiff, Colorado Interstate Gas Company (CIG). See Colorado Interstate Gas Co. v. Natural Gas Pipeline Co., 661 F.Supp. 1448 (D.Wyo.1987) (CIG I ), rev'd in part and aff'd in part, 885 F.2d 683 (10th Cir.1989) (CIG II ). In this most recent appeal, Natural argues, inter alia, that the district court erred on remand in determining that Colorado law, rather than Wyoming law governs CIG's pendent state law tort claim against Natural.I. Background
 
 
 2
 CIG and Natural are competing owners of pipelines which transport natural gas. For many years, Natural has purchased gas from CIG transporting it to states in the midwest and east. In 1981-82 a new pipeline, the Trailblazer System, was constructed to transport newly discovered reserves of natural gas out of the Overthrust region of Wyoming. The Trailblazer System is composed of three connected segments of pipeline. CIG and its affiliates have ownership interests in the two westernmost segments, the Overthrust and the WIC pipelines. Natural owns a one-third interest in the third, easternmost segment of the Trailblazer System, the Trailblazer Pipeline.
 
 
 3
 Under an existing contract, CIG had agreed to purchase gas from Champlin Petroleum's Whitney Canyon reserves in the Overthrust region (the Whitney Canyon contract). CIG transported this gas through the two western pipeline sections in the Trailblazer System to its own offshoot pipeline which intersects the system at a point west of Natural's Trailblazer pipeline.
 
 
 4
 In July 1982, CIG and Natural entered into a contract (the Service Agreement) which required CIG to deliver and Natural to purchase specified quantities of natural gas from the Overthrust area. The Service Agreement set forth how much gas Natural was required to purchase and also contained a minimum bill provision. Because the Service Agreement involved the interstate sale of natural gas, the rates and terms specified required approval by the Federal Energy Regulatory Commission (FERC). In a proceeding before that body, FERC modified the terms of the Service Agreement to reduce the price Natural had to pay for unpurchased gas.
 
 
 5
 In July 1983, Natural sharply reduced its gas purchases from CIG, choosing instead to pay CIG for the unpurchased gas at the lower FERC mandated rate. Natural then purchased gas from other sources to replace lost volumes from CIG, often paying more for the gas. Under the Service Agreement, CIG was obligated to be ready to deliver volumes of gas requested by Natural. Thus, CIG could not use the pipeline capacity reserved for Natural to ship gas for other customers. Moreover, Natural occasionally resumed purchases of gas from CIG when CIG sought to sell gas to new customers, terminating these purchases after the new customers went elsewhere. Due to the oversupply of gas in CIG's system created by Natural's refusal to take gas, CIG was forced to stop purchasing gas from some of its suppliers. One of those suppliers was Champlin Petroleum (Champlin).
 
 
 6
 Despite its refusal to purchase gas from CIG, Natural negotiated with Champlin to acquire the Whitney Canyon reserves. In the ensuing discussions, Natural agreed to an increase in the purchase price for Champlin gas if Champlin obtained a release of CIG's rights to the gas under the Whitney Canyon contract. When CIG attempted to negotiate revisions to that contract because of its inability to take Champlin gas, Champlin insisted that CIG release its rights. CIG acceded. The next day, Natural bought Champlin's Whitney Canyon gas, although it still refused deliveries from CIG. Natural shipped the Whitney Canyon gas through the Trailblazer Pipeline.
 
 II. Prior Proceedings
 
 7
 CIG brought this action alleging that Natural violated federal antitrust laws by attempting to monopolize the market for the long-distance transportation of Wyoming natural gas, that Natural conspired to monopolize that market, that Natural breached the Service Agreement and its duty of good faith and fair dealing, and that Natural tortiously interfered with CIG's contractual relations with Champlin.
 
 
 8
 In CIG I, the jury awarded CIG $724,033,361 in damages based on CIG's antitrust, breach of contract and tortious interference with contractual relations claims. Following deductions for duplicative awards, the district court reduced the total jury award to $412,237,972, and entered judgment for CIG on that amount. Natural appealed.
 
 
 9
 In CIG II, a panel of this court reversed the antitrust and breach of contract verdicts. See CIG II, 885 F.2d at 697. However, the panel affirmed the verdict for tortious interference with contractual relations, rejecting Natural's assertion that the award interfered with FERC's authority. See id. at 690-91.
 
 
 10
 Accordingly, we remanded to the district court to enter judgment on the tort award alone. Our mandate, expressed in our judgment and opinion, was that the district court's judgment was affirmed in part and reversed in part, concluding: "[t]he cause is remanded to the United States District Court for the District of Wyoming to enter judgment in accordance with the opinion of this court."
 
 III. On Remand
 
 11
 Returning to the district court, CIG moved to have $15,204,555 in demand charges awarded by the jury in the original verdict reinstated in the new judgment required by the remand. In CIG I, the district court had entered judgment on the tort award for $39,231,072, but reduced this award to $24,026,517 "because the jury awarded Colorado Interstate ... demand charge losses ($15,204,555) under the attempt to monopolize and tortious interference claims[.]" I R. Doc. 578 at 2.[1] CIG had apparently agreed to have the demand charges listed under the antitrust award, thus benefitting from the treble damages permitted by the statute.
 
 
 12
 Over Natural's objections, the district court agreed to reinstate the demand charges of $15,204,555 in the judgment on the tort award. The court stated that its Judgment of November 10, 1986, "made it clear that the tortious interference award included damages for restitution and for demand charges." Order on Post Appeal Motions, II R. Doc. 694 (Pleadings) at 12, 15 ("Remand Order"). The court noted that it had specifically withheld a jury instruction prohibiting duplicative awards "so that in the event any one count failed there could be a complete answer by the jury on the other counts[.]" Id. The court concluded that CIG was entitled to recover the demand charges because the jury intended that it should and the only reason for deducting them at all was "to avoid duplicative damages on two different causes of action[.]" Id. at 13, 15.
 
 
 13
 By an opposing motion, Natural sought to have the tort judgment set aside in toto on the basis of an intervening decision by the Wyoming Supreme Court, Price v. Sorrell, 784 P.2d 614 (Wyo.1989), which was decided after CIG II. Natural argued that Price required the district court to enter judgment against CIG because Wyoming had now made clear that it refused to adopt § 766A of the Restatement (Second) of Torts (1979), the basis of CIG's tort claim. Natural argued that since federal courts are obliged to apply the most recent controlling state court decision on state substantive law, Natural was entitled to judgment on the state law tort claim because the district court had found Wyoming law to govern, and that law would not allow such tort recovery.
 
 
 14
 The district court conceded that in CIG I it had stated that "Wyoming would recognize a cause of action under § 766A." Remand Order at 6 (quoting CIG I, 661 F.Supp. at 1449). The court also acknowledged that the Price case demonstrated that its CIG I "prediction proved wrong." Id. at 7. Nevertheless, the court stated:
 
 
 15
 this Court disputes Natural's contention that Wyoming substantive law applies. This Court never carefully considered whether Wyoming or Colorado law applied in this instance since, at that time, neither Colorado nor Wyoming courts had addressed the adoption or rejection of § 766A. So by default, this Court applied what it presumed Wyoming law would be. The situation has changed, however, with Wyoming rejecting § 766A in Price and Colorado adopting § 766A in Westfield Development Co. v. Rifle Investment Associates, [786 P.2d 1112 (Colo.1990) ].
 
 
 16
 Remand Order at 7-8. Accordingly, the court conducted a choice of law analysis.
 
 
 17
 The court observed that Wyoming applies the rule of lex loci delicti in tort cases, which requires application of "the substantive law of the state where the harm or injury to the plaintiff occurs[.]" Id. at 8. Assuming that the place of the wrong was "where the last event necessary to make an action liable for an alleged tort" took place, Restatement (First) of Conflicts § 377 (1934), the court held that:
 
 
 18
 the last element of a tort cause of action is damages. ... In a physical injury tort claim, damages generally are incurred in the state where the plaintiff is physically injured by the defendant. In this instance, the injuries inflicted were financial. Defendants tortiously interfered with CIG's ability to conduct its business. 'The "last event necessary" in this tort is the constriction of plaintiff's opportunities, and that occurs where the plaintiff experiences it, i.e., his place of residence.' Cesnik v. Chrysler Corp., 490 F.Supp. 859, 872-73 (M.D.Tenn.1980).... Moreover, even if one were to look at the actions taken by the parties, the last event necessary for liability to be imposed upon Natural, was Natural's agreement to purchase gas from Champlin Petroleum, the same gas Natural forced CIG to give up. This agreement took place in Colorado, not Wyoming.
 
 
 19
 Under this analysis, the Court now finds that Colorado substantive law applies to CIG's tortious interference with a contract claim. Colorado, as contrasted with Wyoming, recognizes § 766A causes of action. Accordingly, CIG's tort claim is still valid.
 
 
 20
 Remand Order at 9-10 (citations omitted).
 
 
 21
 By an order filed March 26, 1990, the district court entered judgment on the tort claim in favor of CIG for $23,213,394 in damages. The court added $4,827,129 in post-judgment interest pursuant to the 5.75% rate set in the original November 10, 1986 judgment order. The court's order set a new post-judgment interest rate of 8.36% to run from the date of its new judgment. By order of April 6, 1990, the court denied Natural's motions for a new trial and JNOV. Natural then timely appealed.
 
 IV. Discussion
 
 22
 On appeal Natural makes a number of arguments: 1) the district court erred in its choice of law analysis; 2) the court improperly awarded demand charge damages because such damages are preempted by FERC's authority, violate the filed rate doctrine, and are based on false evidence presented at trial; 3) the district court erred in applying post-judgment interest at two different rates; 4) the court erred by applying interest on the demand charges dating back to the original judgment. We need not reach these arguments, however, because the district court's error was more fundamental--the court acted beyond the scope of our mandate and accorded relief not available on post affirmance remand.
 
 
 23
 On remand, both parties moved to have the district court alter the scope of the tort judgment which this court had affirmed in CIG II. We conclude that the district court could not properly act on either motion, and accordingly vacate and remand for an entry of judgment in favor of CIG on the tort award for $8,008,839, in accord with our clear mandate and our judgment affirming that award. See 885 F.2d at 691 and n. 12, 697.
 
 
 24
 A. CIG's Motion to Revise the Tort Judgment Amount
 
 
 25
 After this court's decision in CIG II, CIG moved to have the district court declare that the tort judgment is for $23,213,394 plus post-judgment interest.[2] Although not stylized as such, we must construe this motion to be pursuant to Fed.R.Civ.P. 60(b). In CIG II, we affirmed the tortious interference part of the district court's decision and judgment, and remanded with instructions "to enter judgment in accordance with the opinion of this court." II R., Doc. 679 at 2. By this action, the tort portion of the district court's original judgment became final, with only the ministerial function remaining of entry of a corrected judgment therefor.
 
 
 26
 As a result, there were very few options available to CIG to have the district court's judgment changed in any way.[3] CIG's motion could not properly have come pursuant to Rule 59(e), to alter or amend the judgment, because it was out of time. In our view, Rule 60(b) appears to provide the only vehicle by which CIG could have possibly presented its request that the district court reinstate the demand charges into the tort judgment.
 
 
 27
 Rule 60(b), however, only provides relief from a judgment under certain specified conditions. The Rule provides that:
 
 
 28
 (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
 
 
 29
 Of the reasons listed, the only one possibly applicable to the facts of this case is number (6), which permits relief for "any other reason justifying relief." In Collins v. City of Wichita, 254 F.2d 837 (10th Cir.1958), we noted that "in extraordinary situations, relief from final judgment may be had under Rule 60(b)(6), when such action is appropriate to accomplish justice." Id. at 839 (emphasis added). Based on the facts before us, we must conclude that the relief sought by CIG--a change in the content of the judgment affirmed by this court--is unsupported by an extraordinary reason to justify relief.
 
 
 30
 Before the district court originally imposed its judgment, the demand charges were removed from the tort portion of the judgment, with the result that CIG had this amount trebled as part of the antitrust damages under 15 U.S.C. § 15 (1914). Thus, as the prior appeal came to us in CIG II, CIG had the demand charges within the antitrust damages award in its favor, with the benefit of trebling. CIG vigorously fought through that appeal in CIG II to sustain that judgment and arrangement of the damage award, but unfortunately for CIG, it lost when the antitrust judgment was rejected by this court. CIG II, 885 F.2d at 697. We cannot agree that these circumstances furnish a basis for extraordinary relief from the judgment we affirmed.
 
 
 31
 Additionally, we believe that concerns of finality dictate that the district court must be circumscribed by our mandate. See Collins, 254 F.2d at 839 (noting that "[l]itigation must end sometime"). As we noted in Hicks v. Gates Rubber Co., 928 F.2d 966, 969 (10th Cir.1991), "[t]o decide whether the district court violated the mandate, it is necessary to examine the mandate and then look at what the district court did." Here, the district court originally deducted these demand damages because the jury duplicated them in both the tort and antitrust claim awards. See I R.Doc. 578 at 2. In its later opinion denying Natural's motion for JNOV, the court again stated that following CIG's acceptance of the ordered remittitur, "[t]he sum owed by [Natural] totals $8,008,839[,]" CIG I, 661 F.Supp. at 1479, this figure being the one-third of the $24,026,517 restitutionary tort award given to CIG of profits of Trailblazer Pipeline Company. Thus, we must agree with Natural that "[t]his Court never addressed the propriety of awarding the demand charge payments as tort damages." Appellant's Reply Brief at 19.
 
 
 32
 Our mandate to the district court instructed it to enter judgment on the tort award that was before this court in CIG II. The rule is well established that a district court must comply strictly with the mandate rendered by the reviewing court. See Laffey v. Northwest Airlines, Inc., 642 F.2d 578, 584-85 (D.C.Cir.1980) (district court has "no power to reconsider issues laid to rest" on prior appeal). As a corollary to this rule, we are convinced that Rule 60(b)(6) cannot be properly used to alter the substantive content of a judgment once it has been affirmed on appeal except in extraordinary situations. To hold otherwise would be to permit a district court to violate our mandate that a judgment be entered "in accordance with the opinion of this court." II R.Doc. 679 at 2. Having thoroughly reviewed the briefs submitted in the first appeal and the careful decision in CIG II, we believe the panel in CIG II intended to, and did, resolve all the issues presented to it. Accordingly, a second appeal should not now be entertained to challenge the affirmed tort award.
 
 
 33
 We are unable to find any authority for revision of a judgment as was made here, and none is cited. A suit is deemed " 'pending until the appeal is disposed of,' and until disposition any judgment appealed from it is still sub judice." de Rodulfa v. United States, 461 F.2d 1240, 1253 (D.C.Cir.) (quoting Mackenzie v. A. Engelhard & Sons Co., 266 U.S. 131, 142-43, 45 S.Ct. 68, 69, 69 L.Ed. 205 (1924)), cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972); Nicastro v. United States, 206 F.2d 89, 92 (10th Cir.1953). Following appellate disposition, however, the judgment is no longer subject to district court amendment beyond the ministerial dictates of the mandate, which encompasses the full scope of jurisdictional power granted to the district court on remand. Accordingly, we vacate the district court's decision to grant CIG's motion to reinstate the demand charges removed from the tort judgment entered on November 10, 1986.
 
 
 34
 B. Natural's Motion to Apply Intervening State Law
 
 
 35
 For similar reasons, we also reject Natural's contention that the choice of law issue cannot be avoided. Natural argues that the district was required to apply Price v. Sorrell because the Supreme Court has declared that "until such time as a case is no longer sub judice, the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court." Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941). See also Huddleston v. Dwyer, 322 U.S. 232, 236, 64 S.Ct. 1015, 1017, 88 L.Ed. 1246 (1944). As mentioned above, however, we conclude that the question of which state law properly applied was no longer sub judice after this court disposed of the appeal in CIG II and the time for a petition for certiorari had passed.
 
 
 36
 More importantly, for the same reasons that we believe CIG's motion must come, if at all, under Rule 60(b)(6), we also conclude that Natural's motion is controlled by that rule.[4] Over thirty years ago, this court held in Collins that "[a] change in the law or in the judicial view of an established rule of law is not such an extraordinary circumstance which justifies relief" under Rule 60(b). Id. at 893; but cf, Pierce v. Cook & Co., 518 F.2d 720, 722-23 (10th Cir.1975) (en banc ) (finding extraordinary circumstances where the change in law arose out of the same accident in which the plaintiffs had been involved), cert. denied, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). The Collins holding is still the rule in this circuit. See Van Skiver v. United States, 952 F.2d 1241, 1244-45 (10th Cir.1991). Thus, Natural had no basis on which it could have asked the district court to apply the Price case: this case was already over for purposes of selecting the governing law.
 
 
 37
 Accordingly, the revised judgment of the district court entered March 26, 1990, now on appeal, must be VACATED; the case is REMANDED with instructions for entry of judgment in favor of CIG on its tort award for $8,008,839, plus post-judgment interest to run from November 10, 1986.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Additionally, in CIG I, the district court further reduced the remaining $24,026,517 of restitution damages in the tort award (after deducting the demand charges) by two-thirds to reflect the fact that Natural owned only one-third of the Trailblazer Pipeline Company and received only one-third of the funds in question. See CIG I, 661 F.Supp. at 1479. Thus, in CIG II, the tort award appealed to this court then totalled $8,008,839. See CIG II, 885 F.2d at 691 n. 12
 Although this court's original opinion incorrectly made reference to $8,000,839 in restitutionary tort damages, see CIG II, 885 F.2d at 691 n. 12, the actual amount of tort damages awarded by the district court and affirmed by this court is $8,008,839. See CIG I, 661 F.Supp. at 1479.
 
 
 [2]
 CIG apparently also moved pursuant to Fed.R.Civ.P. 54(b) to have the tort judgment restated as a separate award. As indicated in the text above, however, we construe this motion as one actually brought pursuant to Rule 60(b)(6). Rule 54(b) was not a proper vehicle for this request because the rule is designed to permit a party to gain an immediate appeal of a severable portion of multiple claim litigation. Moreover, after our disposition in CIG II, the precondition to use of Rule 54(b), that there be "more than one claim for relief" presented to the district court did not exist. Our decision in CIG II eliminated all of CIG's causes of action except the affirmed tort award. Thus, there was nothing from which the tort award could be declared separate
 
 
 [3]
 As an aside, CIG could have, but did not, seek rehearing or to have this court recall its mandate for any correction it thought was necessary to the district court's judgment. CIG, instead, filed a petition for certiorari in the Supreme Court. This petition was denied
 
 
 [4]
 We note that Natural also argued to the district court on remand that CIG had possibly perpetrated a fraud or misrepresentation on the court with respect to these demand charges. CIG recovered these charges because it proved at trial that it could not use its rights to the Canyon Creek and Overthrust facilities without the Champlin gas misappropriated by Natural. Natural alleged that immediately after trial, CIG began using these allegedly "useless" facilities and profiting thereby. Natural apparently made this assertion to the district court after trial, and renewed it on remand
 In its order on remand, the district court noted that Natural proffered an affidavit of CIG's Vice President which stated that CIG had shipped some gas through the facilities. The court noted, however, that the same affidavit showed that the shipped gas belonged to a third party, not CIG, and that the revenue received was minimal. The district court held that "[t]he evidence does not support Natural's contention of inequity." Remand Order at 15.
 To the extent that this motion properly comes within Rule 60(b)(3)'s provision for fraud, misrepresentation or misconduct of another party, we believe the district court could properly have entertained this argument on remand had there been demand charges remaining in the affirmed tort award. However, the elimination of the demand charge damage award in CIG II mooted this issue so it need not have been reached either.