In re Jerry J. FRASCHILLA, Debtor.

**American Express Travel Related Services Company, Inc., Appellant,**

v.

**Jerry J. Fraschilla, Appellee.** |

**BAP No. CC–98–1034–KJB. Bankruptcy No. LA 91–94016–SB. Adversary No. LA 92–01197–SB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 21, 1998.

Decided June 16, 1999.

Dennis Winters, Winters Law Firm, Santa Ana, CA, for American Express Travel Related Services.

Before KLEIN, BRANDT and JONES, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This is an appeal from a judgment in favor of a defaulted defendant in a credit card nondischargeability action. The primary question relates to the effect of an intervening change in controlling authority on the application of the doctrine of the law of the case following a remand from the Bankruptcy Appellate Panel ("BAP").

The judgment was entered at the end of a trial that the court, on remand following reversal, ordered to be held notwithstanding that the BAP's mandate had included instructions to enter judgment for the plaintiff. The trial court justified its deviation from the mandate by relying on intervening decisions of the Ninth Circuit as a change in controlling authority. The plaintiff appeared at the time fixed for trial, declined to present evidence in support of its case, and suffered an adverse judgment, after the announcement of which it unsuccessfully tried to persuade the court to recuse itself. We AFFIRM.

## FACTS

Between April 29, 1991, and May 22, 1991, the debtor charged $24,812.84 for cash, goods and services to his American Express card in seven transactions, that included four transactions to obtain cash and/or travelers checks totaling $24,000.00.

The account, which the debtor had maintained since 1969, had been paid in full as of April 29, 1991. The terms of the account required that charges be paid in full each month, with the exception of "sign & travel" charges that totaled $582.69 as of the date of bankruptcy.

The debtor did not make the $9,211.24 payment due in May 1991, did not make the additional $15,044.00 payment due in June 1991, and did not make payments in subsequent months.

In October 1991, the debtor filed a chapter 11 case that was subsequently converted to chapter 7.

American Express filed a timely nondischargeability action under 11 U.S.C. § 523(a)(2)(A). The debtor did not answer and suffered entry of default.

In June 1994, the trial court denied American Express' motion for default judgment, invoking the so-called "assumption of the risk" theory articulated by the Sixth Circuit in *Manufacturer's Hanover Trust Co. v. Ward*, 857 F.2d 1082 (6th Cir.1988). The trial court did not determine any of the facts and entered judgment for the defaulted defendant.

In May 1996, the BAP reversed, citing its 1995 decision in *In re Lee*, 186 B.R. 695 (9th Cir. BAP 1995), and its 1994 decision in *In re Eashai*, 167 B.R. 181 (9th Cir. BAP 1994). It viewed the factual allega-

tions in the complaint as adequate under the then-existing state of the law to warrant entry of default judgment. Accordingly, it remanded with instructions to enter default judgment in favor of American Express.

Later in 1996, after the remand but before the matter was brought before the bankruptcy court, the Ninth Circuit decided *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082 (9th Cir. 1996), and *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280 (9th Cir.1996). In these decisions, the court of appeals articulated a test that was different from those which the trial court and the BAP had applied.

The remanded adversary proceeding came before the trial court on plaintiff's motion for entry of default judgment in accordance with the BAP's mandate. The trial court declined to enter default judgment in light of *Eashai* and *Anastas* and set the matter for trial. The court told the plaintiff that it would have to prove its case with competent, admissible evidence.

The plaintiff tried to preempt trial by seeking a writ of mandamus from us, which writ did not issue.

On the day fixed for trial, American Express appeared and declined the opportunity to present evidence, saying that "it would be inappropriate at this time to give any additional witnesses for fear that it may be interpreted as a waiver of the benefit of the appellate panel's decision so that we are requesting entry of judgment based on the request for judicial notice of the memorandum of decision from the appellate panel."

The trial court explained that at least two Ninth Circuit decisions had intervened since the time of the BAP's remand and that it felt obliged to apply the test prescribed in those intervening binding precedents. In addition, it noted that the factual record did not establish a prima facie case of nondischargeability.

Since no evidence was presented by the plaintiff to support its complaint, despite being afforded the opportunity to do so, the trial court struck an affidavit that had been filed in 1994 and announced that it was entering judgment for the defendant.

After the court announced judgment in favor of the defendant, American Express moved for recusal, which motion was denied.

This appeal ensued.

## ISSUES

1. Whether the bankruptcy court improperly failed to follow the law of the case established by the BAP's mandate when it denied plaintiff's motion for entry of default judgment and required it to proceed to trial.

2. Whether the bankruptcy court erred in not granting the motion to recuse.

3. Whether the bankruptcy court abused its discretion by entering judgment in favor of defendant.

## STANDARD OF REVIEW

■ Whether the trial court was privileged to deviate from the law of the case established by an appellate mandate is an issue of law that we review de novo. *AT & T Universal Card Servs. v. Black (In re Black)*, 222 B.R. 896 (9th Cir. BAP 1998).

■ A trial judge's decision to decline to recuse is reviewed for an abuse of discretion. *Yagman v. Republic Ins.*, 987 F.2d 622 626 (9th Cir.1993); *Voigt v. Savell*, 70 F.3d 1552, 1565 (9th Cir.1995).

■ Whether an adversary proceeding should be either dismissed or judgment entered for defendant at the close of a trial at which the plaintiff declines to proffer evidence is reviewed for abuse of discretion.

## DISCUSSION

We address the issues seriatim.

## I

American Express contends that the doctrine of law of the case precluded the trial court from considering intervening precedent from the Ninth Circuit Court of Appeals and precluded any exercise of discretion regarding determination of the underlying facts.

## A

■ The law of the case doctrine, in pertinent part, requires that a decision by an appellate court on an issue be followed in all subsequent proceedings in the same case. *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278 (9th Cir.1996); *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir.1993); *Maag v. Wessler*, 993 F.2d 718, 720 n. 2 (9th Cir.1993); 18 J.W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 134.20 (3rd ed.1998).

■ The doctrine, however, is not an absolute bar to revisiting issues of law. As Mr. Justice Holmes noted in an oft-quoted statement, the law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power." *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912), *quoted with approval, United States v. Miller*, 822 F.2d 828, 832 (9th Cir.1987).

## 1

■ The standard statement of the application of the law of the case doctrine to subsequent appeals in this circuit is as follows:

[U]nder the "law of the case" doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case. The doctrine is discretionary, not mandatory. It merely expresses the practice of courts generally to refuse to reopen that which has been decided, and is not a

limitation of the courts' power. Although the observance of the doctrine is considered discretionary, this court has ruled that the prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.

*United States v. Garcia*, 77 F.3d 274, 276 (9th Cir.1996) (internal quotations and citations omitted); *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir.1995); *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991); *United States v. Miller*, 822 F.2d at 832; *Kimball v. Callahan*, 590 F.2d 768, 771 (9th Cir.1979). *See generally*, 18 MOORE'S FEDERAL PRACTICE § 134.21[2]—[3]; 18 CHARLES A. WHITE ET AL., FEDERAL PRACTICE & PROC. § 4478 (1981 & 1999 Supp.).

## 2

The Ninth Circuit's *Rainbow Magazine* decision is a specific application of the exception for intervening controlling authority and illustrates how the exceptions to the law of the case doctrine function in the context of multi-tiered bankruptcy appeals. At the first stage of appeal, the BAP concluded, inter alia, that a bankruptcy court lacks inherent power to impose sanctions on account of a bad faith filing against a nonattorney, nonparty who had not signed the petition and hence reversed $261,000 in sanctions against one Caldwell. *Caldwell v. Farris (In re Rainbow Magazine, Inc.)*, 136 B.R. 545, 553 (9th Cir. BAP 1992). There was no ambiguity about the BAP's rejection of the "inherent power" theory: "we decline to uphold the bankruptcy court's imposition of sanctions against Caldwell under any inherent power."

The BAP's remand permitted further proceedings to enable the bankruptcy court to consider whether sanctions could be imposed against Caldwell under Feder-

al Rule of Bankruptcy Procedure 9011 for having signed a fraudulent statement of financial affairs and under theories other than inherent power and, having affirmed Rule 9011 sanctions against the debtor, permitted reconsideration of the appropriate amount of such sanctions. *Id.*, at 556. The remand did not permit further consideration of the "inherent power" theory.

On remand, the bankruptcy court nevertheless revisited the "inherent power" theory that the BAP had specifically rejected, identified an intervening Ninth Circuit decision that suggested that a trial court does have such inherent authority to sanction, concluded that the intervening controlling authority exception to the law of the case doctrine applied and reimposed sanctions of $249,389.31 under its inherent power (in addition to $45,000 under Rule 9011). Caldwell's ensuing appeal was channeled through the district court, which affirmed.

The Ninth Circuit affirmed both the $249,389.31 award under the court's inherent authority and the $45,000 award under Rule 9011. The court of appeals expressly agreed with the bankruptcy court that the intervening controlling authority exception to the law of the case doctrine applied to the inherent authority issue. *Rainbow Magazine*, 77 F.3d at 282.[1] Noting that the appeal was interlocutory in the sense the there was still opportunity for post-remand review of the entire sanctions dispute, it observed that it "would be a convoluted procedure not to allow the bankruptcy court to apply subsequent controlling precedent of this circuit in such a circumstance." *Id.*

■ In short, bankruptcy trial courts are permitted on remand to consider whether any exceptions to the law of the case doctrine excuse compliance with a determination made by an appellate court. *E.g., Rainbow Magazine, supra; Hegler v. Borg, supra; United States v. Miller, su-*

pra; *Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108 (7th Cir.1986); *Leggett v. Badger*, 798 F.2d 1387 (11th Cir.1986).

■ To be sure, the actual incidence of such excuses from compliance will be rare and exceptional. And, in such a rare and exceptional situation, it behooves a trial court to articulate a specific and convincing justification, lest it be chastised severely by the appellate court.

Accordingly, on remand the trial court in the instant appeal was bound by the law of the case doctrine to apply the law as determined by the BAP in the prior appeal unless it could identify an applicable exception.

### B

■ The trial court found intervening controlling precedent that it regarded as excusing obedience to the law of the case doctrine.

The trial court explained that at least two Ninth Circuit decisions had intervened since the time that the Bankruptcy Appellate Panel had remanded the adversary proceeding in May 1996—*Eashai*, 87 F.3d 1082 and *Anastas*, 94 F.3d 1280—and that it was obliged to follow and apply the test prescribed in those binding precedents.

Indeed, *Eashai* and *Anastas* did change the landscape regarding credit card nondischargeability actions in the Ninth Circuit in a manner that did alter the analysis that was applicable when the BAP decided the initial appeal in this case in May 1996.

The previous decision of the BAP was plainly correct on the substantive nondischargeability issues at the time that it rendered its decision reversing the trial court's 1994 judgment for the defendant. It had in 1995 rejected the so-called "assumption of the risk" theory of credit card nondischargeability in another appeal from the same judge. *Citibank (South Dakota)*

---

1. "The bankruptcy court held that the law of the case doctrine did not apply because of the second [intervening controlling authority] ex-

ception. We agree." *Rainbow Magazine*, 77 F.3d at 282.

*N.A. v. Lee (In re Lee),* 186 B.R. 695 (9th Cir. BAP 1995). Under that earlier analysis, it was essentially sufficient for a plaintiff to demonstrate enough of the BAP's oft-cited twelve *Dougherty* factors to persuade the trier of fact that the totality of the circumstances were such that the debt should not be discharged. *Citibank South Dakota N.A. v. Dougherty (In re Dougherty),* 84 B.R. 653 (9th Cir. BAP 1988). Although the text of the actual BAP *Dougherty* decision (which also rejects the "assumption of the risk" theory) indicates that its analysis was focused primarily on the element of intent and that other elements of fraud had to be proved as well, it was not commonly understood to be so limited. *See Eashai,* 87 F.3d at 1088.

*Eashai,* which the Ninth Circuit issued two months after the BAP's remand in the instant appeal, considered the argument that the twelve "totality of the circumstances" factors were probative of all the essential elements of § 523(a)(2) nondischargeability for common law fraud—especially the element of the creditor's reliance. The Ninth Circuit incorporated the BAP's twelve *Dougherty* factors into the law of the circuit to establish the element of intent to deceive and clarified that the other essential elements also had to be established:

> We incorporate the twelve factors of *Dougherty* into an approach which gives consideration to all of the elements of common law fraud. We adopt the twelve factors of *Dougherty* to establish the element of intent to deceive. However, a creditor in a credit card kiting case must also prove the other elements of common law fraud, including a false representation, justifiable reliance, and damages.

*Eashai,* 87 F.3d at 1088. The Ninth Circuit concluded that the element of justifiable reliance was established by the debtor's pattern of making minimum payments in a fashion that would not invite scrutiny of the account by the creditor. *Eashai,* 87 F.3d at 1091.

Thus, although *Eashai* affirmed the BAP decision in the same case, 167 B.R. 181 (9th Cir. BAP 1994), it did so in terms that amplified the importance of the other elements of common-law fraud.

Several months later, in *Anastas,* the Ninth Circuit, in reversing a finding of nondischargeability, adjusted the focus to emphasize the need to make an actual finding regarding intent and stated that:

> While we recognize that a view to the debtor's overall financial conditions is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, and that the twelve factors we set out in *Eashai* are useful for arriving at a finding of bad faith, the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

*Anastas,* 94 F.3d 1280.

While *Anastas* is somewhat opaque, the net effect of the two decisions was to change the understanding of the law of credit card nondischargeability in the Ninth Circuit. In such matters, the trial courts need to focus upon the precise facts and, in a craftsmanlike manner, make findings as to all elements of fraud.

It was against this background that the trial court was presented with the American Express motion to enter default judgment based on a BAP remand that antedated *Eashai* and *Anastas.*

### C

The trial court concluded that the existing record did not explicitly address all of the elements of fraud in a manner that complied with the dictates of *Eashai* and *Anastas* and noted that it had never made the requisite findings of fact on the various elements. Accordingly, it ordered a trial. We cannot say that this was error.

To be sure, we recently reached a contrary conclusion in a somewhat similar situation, *Black,* 222 B.R. 896, that is distin-

guishable in key respects that facilitate our analysis. In the first place, as the initial Panel decision in *Black* was issued in 1997 after *Eashai* and *Anastas* had become the law of the circuit, the trial court was not presented with the intervening controlling precedent exception to the law of the case doctrine. More important, unlike the instant appeal, the *Black* record included evidence directed to the *Dougherty* factors. *Black,* 222 B.R. at 898.

Here, the record (including the declaration stricken at the time of trial) is devoid of evidence of the *Dougherty* factors. Nor is there evidence to establish all the other essential elements.

The only explicit factual material in the record is the Declaration of Cengiz Aksan that American Express had submitted in support of its original motion for default judgment in 1994. In that declaration, Mr. Aksan recites that the debtor maintained an American Express account that normally had to be paid in full each month from 1969 until April 1991, and that was in good standing as of April 1991. Then he indicates that in a period of 25 days the debtor incurred $24,812.24 in liabilities on the account, none of which sum was paid. There is no mention of whether similar sums were charged in the 22 years that the account apparently was in good standing.

From the mere fact that the debtor did not pay, Mr. Aksan opines that the debtor did not intend to pay the obligation and that he knew he could not pay it.

The other pertinent fact of record is that the debtor filed his chapter 11 case in October 1991, about five months after the charges were incurred.

There is no record as to the debtor's financial condition at the time of the charges or in any of the five months intervening between the charges and the filing of the chapter 11 case. And there is no factual record to support the proposition that he incurred the obligation with the intention of filing a bankruptcy case five months later.

This constellation of facts is plainly inadequate to support a finding of nondischargeability under *Anastas.* The Ninth Circuit noted:

> Thus, the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay were the focus of the fraud inquiry, too often there would be an unfounded judgment of non-dischargeability of credit card debt. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt.

*Anastas,* 94 F.3d at 1285–86.

The trial court insisted that American Express come forward at a trial on the merits with competent, admissible evidence probative of the essential elements of credit card nondischargeability under settled law of the Ninth Circuit that had not existed at the time of the previous appellate decision in this case. This was appropriate.

### D

 The so-called "mandate rule" does not compel a different conclusion. The mandate rule is a subpart of the law of the case doctrine. *United States v. Miller,* 822 F.2d at 832 ("Our statement in *Miller I* and the mandate constituted the law of the case").

### 1

 As a subpart of the law of the case doctrine, the mandate rule is subject to the same exceptions. *Id.* It is, as the First Circuit has observed, a discretion-guiding rule that is subject to an occasional exception in the interests of justice. *United States v. Bell,* 988 F.2d 247, 251

(1st Cir.1993).[2] The Eleventh Circuit agrees. *Leggett v. Badger,* 798 F.2d at 1389.[3]

In effect, when there has been an intervening authoritative decision of a higher appellate court to which both the lower appellate court that issued the mandate and the trial court owe obedience, then the trial court is presented with the dilemma of a clash between the dictates of the doctrine of *stare decisis* and the imperative of the mandate rule. The correct choice depends upon the contours of the situation and common sense. It is no more comfortable for the trial court than it is for the private soldier who receives contradictory orders from the sergeant and the captain or the employee caught between a middle manager and a top executive.

2

 Trial courts in the Ninth Circuit are permitted to deviate from appellate mandates when there is an applicable exception to the law of the case doctrine.

A close analogy to the instant appeal is *Hegler:* after the Ninth Circuit reversed and remanded a civil action with instructions that the trial court determine whether a particular error was harmless beyond a reasonable doubt, the trial court disobeyed the instruction in the mandate because an intervening Supreme Court decision prescribed a different standard. Another Ninth Circuit panel had no difficulty affirming the trial court. *Hegler v. Borg,* 50 F.3d at 1475.[4]

In another example, ruling that it was error for the trial court to deny a motion to suppress, the Ninth Circuit reversed a judgment of conviction, remanding for further consistent proceedings. *United States v. Miller,* 769 F.2d 554, 560–61 (9th Cir.1985). On remand, the trial court revisited the suppression question, permitted the prosecution to withdraw a concession, and again refused to suppress the evidence, citing a contrary Supreme Court decision, and reinstated the conviction that had been reversed. A central issue in the ensuing appeal was the apparent violation of the mandate rule. A different panel of the Ninth Circuit, emphasizing the availability of the exceptions to the law of the case doctrine, affirmed with the observation that the law of the case "should not be applied woodenly in a way inconsistent with substantial justice." *United States v. Miller,* 822 F.2d at 832–33.

In short, the mandate rule did not preclude the trial court from applying the intervening controlling precedent represented by the Ninth Circuit's decisions in *Eashai* and *Anastas.* In the circumstances, the compulsion of *stare decisis* trumped the mandate rule.

E

 Even if the trial court was obliged to obey our mandate woodenly, we are not. Indeed, the dissent argues that arguments in support of departure from the mandate must be addressed to the appellate court that issued the mandate. We are that appellate court.

---

**2.** "After all, the so-called 'mandate rule,' generally requiring conformity with the commands of a superior court on remand is simply a specific application of the law of the case doctrine and, as such, is a discretion-guiding rule subject to an occasional exception in the interests of justice." *Bell,* 988 F.2d at 251.

**3.** "The 'mandate rule' is but a specific application of the law of the case doctrine. [citation omitted.] As such, the rule in this circuit is that it is subject to the same three exceptions." *Leggett,* 798 F.2d at 1389.

**4.** "While acknowledging that *Hegler I* instructed the district court to determine whether the trial error was harmless beyond a reasonable doubt, the district court nevertheless concluded that *Brecht [v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)] [intervening Supreme Court decision] was the proper standard to employ because it represented an intervening change in the law which excused the application of the law of the case doctrine." 50 F.3d at 1475.

We can affirm for any reason fairly supported by the record. *Jackson v. Southern Cal. Gas Co.*, 881 F.2d 638, 643 (9th Cir.1989). And the record, beyond peradventure, places the issue squarely before us.

Regardless of whether the trial court was within its rights to explore the intervening controlling authority exception to the law of the case doctrine, we certainly are entitled to do so. Thus, where the trial court has actually complied with the appellate mandate, the appellate court can revisit the issue. *E.g., Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 810 (9th Cir.1991).[5]

We are permitted to raise the issue *sua sponte,* even if it means reversal rather than affirmance. *United States v. Garcia,* 77 F.3d at 276.

The Ninth Circuit's decision in *Garcia* is a case in point. A second panel of the circuit *sua sponte* raised the question of the intervening controlling authority exception to the law of the case doctrine and reversed even though the effect of an intervening Supreme Court decision had been neither raised by the parties nor argued below. 77 F.3d at 276.

Our prior mandate is no longer viable as a consequence of intervening Ninth Circuit precedent fixing a test that appellant, who was afforded and declined an opportunity to present evidence addressed to the test, does not satisfy.

We have a duty to own up to the fact that the test emanating from the Ninth Circuit's decisions in *Eashai* and *Anastas* means that our prior mandate must be reconsidered.

## II

After American Express refused to present evidence at the time set for trial and after the trial court had explained its reasoning orally on the record and announced its decision adverse to American Express, it asked that the trial judge recuse himself. The trial court denied the request.

■■■ Recusal is justified either by actual bias or by the appearance of bias measured by the answer to the question whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. 28 U.S.C. § 455(a); *Yagman,* 987 F.2d at 626.

■■■ Judicial rulings and remarks not based on an extrajudicial source "almost never constitute a valid basis" for recusal. In the end, it is fundamentally a question of degree. Disqualification is warranted only when judicial rulings and remarks not based on extrajudicial sources rise to "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

■■■ A trial court's denial of recusal is reviewed for abuse of discretion. *Yagman,* 987 F.2d at 626.

■■■ Although an impartiality issue can be raised at any time, the timing may affect the weight ascribed to the evidence said to be probative of bias or prejudice. One who waits to raise an impartiality issue until after adverse decisions are announced undermines the weight that will be ascribed to the evidence of bias or prejudice.

■■■ American Express contends that the impartiality of the trial judge might reasonably be questioned because he required competent, admissible evidence probative of the essential elements of the

---

**5.** "The doctrine of law of the case does not bar our reconsideration of *Dean I*. The Supreme Court's decision in *[Chicago Teachers Union, Local No. 1] v. Hudson,* [475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986)] is intervening authority which we are obligated to follow. Therefore, this situation falls within one of the recognized exceptions justifying a second review. We reverse the partial summary judgment." *Dean,* 924 F.2d at 810.

relief requested and because the judge has ruled similarly in other cases. There is no specific indication of either favoritism or antagonism toward American Express.

We perceive no lack of impartiality in a judge who requires admissible evidence probative of the essential elements of the relief requested. There certainly has been no showing of anything in the nature of antagonism or favoritism that rises to the level necessary to warrant recusal.

Accordingly, we conclude that the court did not abuse its discretion.

### III

■ As to the trial court's entry of judgment in favor of the defendant, which is tantamount to dismissal with prejudice, American Express has not adequately explained its refusal to present evidence when given the opportunity to do so.

Since the court formally set the matter as a trial after refusing to enter judgment on motion, American Express was on notice that the adversary proceeding would resolved one way or the other at the close of trial. And it was on notice that evidence would be taken pursuant to Federal Rule of Civil Procedure 43(a). Fed. R.Bankr.P. 9017.

The fact that the declaration of Mr. Aksan was stricken at the time of trial is not material. The declaration is part of the appellate record. We have examined it as if it were an offer of proof under Federal Rule of Evidence 103(a)(2). The declaration is plainly inadequate to establish nondischargeability under *Eashai* and *Anastas*. Thus, even if there was error in striking the declaration at the time of trial, any error was harmless.

American Express elected to present no additional admissible evidence probative of the elements of the prescribed test in the Ninth Circuit and must bear the consequences of its election. The trial court did not abuse its discretion when it disposed of the adversary proceeding adversely to plaintiff.

### CONCLUSION

In sum, the court fixed a time for trial on the merits. It informed American Express of the subsequent developments in the law of the Ninth Circuit. American Express was given an opportunity to present its case and, appearing with counsel at the time of trial, deliberately elected to refrain from presenting evidence to support its case. We find no error.

Accordingly, the judgment entered by the trial court at the conclusion of the time set for trial is AFFIRMED.

JONES, Bankruptcy Judge, dissenting:

The Bankruptcy Appellate Panel issued a clear mandate to the bankruptcy court with "instructions to enter default judgment in favor of American Express, holding the debt of $24,812.84 nondischargeable under Section 523(a)(2)(A)." In my view, the Mandate Rule precludes the bankruptcy court from acting in a manner inconsistent with these instructions. Because this Panel holds to the contrary, I respectfully dissent.

### I. LAW OF THE CASE / THE MANDATE RULE

Lawsuits generally result in a single judgment and a single appeal; however an appellate court may remand for further proceedings. *See* 28 U.S.C. § 2106 (1992). On remand, the decision of an appellate court on an issue of law becomes the "law of the case."

"The law of the case doctrine states that the decision of an appellate court *on a legal issue* must be followed in all subsequent proceedings in the same case." *Maag v. Wessler*, 993 F.2d 718, 720 n. 2 (9th Cir.1993) (emphasis added, internal citation omitted). This doctrine

> is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or

a higher court in the identical case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition.

*Milgard Tempering, Inc. v. Selas Corp. Of America*, 902 F.2d 703, 715 (9th Cir.1990) (quoting *Liberty Mut. Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir.1982)). *Accord*, *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.1993).

Although the terminology "law of the case" has been widely adopted, the Supreme Court has stated that the law of the case doctrine "is something of a misnomer. It does not counsel a court to abide by its own prior decision in a given case, but goes rather to an appellate court's relationship to the court of trial." *United States v. Wells*, 519 U.S. 482, 488 n. 4, 117 S.Ct. 921, 926 n. 4, 137 L.Ed.2d 107 (1997). This relationship establishes the discretionary and nondiscretionary aspects of the law of the case doctrine. The nondiscretionary aspect of the law of the case doctrine is called the "mandate rule." *See United States v. Insurance Co. of N. Am.*, 131 F.3d 1037 (D.C.Cir.1997) (recognizing that a lower court is bound by the mandate of an appellate court and generally may not reconsider issues decided on a previous appeal).

The mandate rule anticipates that a lower court will obey the mandate of an appellate court and carry it into effect according to its terms. *See Vendo Co. v. Lektro–Vend Corp.*, 434 U.S. 425, 98 S.Ct. 702, 54 L.Ed.2d 659 (1978) (acknowledging that once a case is remanded the lower court is bound by decree); *Colorado Interstate Gas Co. v. Natural Gas Pipeline Co. of America*, 962 F.2d 1528 (10th Cir.1992) (recognizing that a lower court must comply strictly with the mandate rendered by the reviewing court). The lower court can choose to follow the mandate, or it can be compelled to follow the mandate by a writ of mandamus or second appeal. *See Vendo Co. v. Lektro–Vend Corp.*, 434 U.S. 425, 98 S.Ct. 702, 54 L.Ed.2d 659 (1978) (noting

that a court may be compelled to give full effect to mandate by writ of mandamus); *In re Ivan F. Boesky Securities Litigation*, 957 F.2d 65 (2nd Cir.1992) (recognizing that an appellate court retains the right to control or modify the acts of the lower court where the mandate has not been fully effected).

The scope of the mandate determines what powers remain with the lower court after the decision. If a judgment is affirmed, nothing remains for the lower court to do but carry the judgment into execution. If the judgment is reversed and remanded with instructions to dismiss, the lower court must dismiss it unless the mandate does not preclude amendment.

If an appellate court affirms a judgment in part and reverses in part and remands for further proceedings, the part of the judgment affirmed may not be disturbed. When further proceedings are specified in the mandate, the lower court is limited to holding to the appellate court's directions. *See City Pub. Serv. Bd. v. General Elec. Co.*, 935 F.2d 78 (5th Cir.1991). When a remand is general, the lower court is free to decide anything not foreclosed by the mandate. *See United States v. Cote*, 51 F.3d 178 (9th Cir.1995) (holding a lower court may consider any matters left open by a mandate); *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219 (7th Cir.1995) (holding a lower court is required to adhere to the ruling of a higher court). The mandate constitutes the law of the case on issues of law that were actually considered and decided by the appellate court or can be inferred from the disposition on appeal. *See Jones v. Lewis*, 957 F.2d 260 (6th Cir.1992) (noting the mandate rule allows a lower court to consider any issues not decided by the appellate court).

Thus, it should be readily apparent that the mandate rule is a "broader" application of the law of the case doctrine. *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The mandate rule is broader because a lower court may no more exceed

the directions of a mandate by retrying the facts or altering its findings than by disregarding the law as decided by the appellate court. *See North Miss. Communications, Inc. v. Jones,* 951 F.2d 652 (5th Cir.1992) (recognizing that when an appellate court has decided that a prima facie showing has been made, the decision becomes the law of the case and the lower court is obligated to follow it); *Wakefield v. Northern Telecom, Inc.,* 813 F.2d 535 (2nd Cir.1987) (determining that in a remand for a new trial, the lower court could not dismiss on the ground that plaintiff had not shown that he could establish a prima facie case).

## II. DISCUSSION

The Bankruptcy Appellate Panel presented the bankruptcy court with a clear mandate and instructions to enter default judgment in favor of the Appellant. This mandate was final, as it was not appealed, and left no discretion with the bankruptcy court on this issue. The bankruptcy court was obligated to carry out the mandate "whether correct or in error." *Colville Confederated Tribes v. Walton,* 752 F.2d 397, 404 (9th Cir.1985). Furthermore, the bankruptcy court could not "give relief beyond the scope of that mandate, but it [could] act on any matter left open by the mandate." *Caldwell v. Puget Sound Elec. Apprenticeship and Training Trust,* 824 F.2d 765, 767 (9th Cir.1987). Here, the bankruptcy court erred by failing to execute the Bankruptcy Appellate Panel's unequivocal mandate.

The *Rainbow Magazine* decisions cited by the majority accurately apply the mandate rule. However, it is important to note that the mandate in the case at bar is unlike the mandate in *Rainbow Magazine.* In the *Rainbow Magazine* dispositive Opinion, the Bankruptcy Appellate Panel provided the following mandate upon remand:

> For the reasons set forth above, the bankruptcy court did not abuse its discretion in determining that the filing of

the bankruptcy petition was sanctionable conduct under Rule 9011 and in imposing sanctions against the debtor. We AFFIRM the bankruptcy court's decision in this regard. We find the imposition of sanctions against Caldwell as a result of the filing of the bankruptcy petition, however, an abuse of discretion. We REVERSE the court in this regard and REMAND *for a determination* of the appropriate sanction, if any, for Caldwell's signing of the fraudulent statement of affairs. We further REMAND *for reconsideration* of the amount of the sanction award in a manner consistent with this opinion.

*In re Rainbow Magazine, Inc.,* 136 B.R. 545, 556 (9th Cir. BAP 1992) (emphasis added). The Bankruptcy Appellate Panel in *Rainbow Magazine* reversed the bankruptcy court because there was "no authority supporting the imposition of sanctions against a non-party" and remanded to the bankruptcy court for determination of an appropriate sanction, if any. *In re Rainbow Magazine, Inc.,* 77 F.3d 278, 282 (9th Cir.1996). Subsequently, on appeal of the bankruptcy court's reimposition of sanctions, the Ninth Circuit Court of Appeals characterized this ruling as "interlocutory." *Id.* In other words, the Bankruptcy Appellate Panel's mandate provided the bankruptcy court with authority to sanction the non-party *if* an appropriate basis could be found for the sanction. The intervening Ninth Circuit decision in *Lockary v. Kayfetz,* 974 F.2d 1166 (9th Cir.1992), provided a basis for the bankruptcy court to appropriately sanction the non-party. Thus, when the bankruptcy court exercised its discretion and imposed the sanction it acted completely within the mandate of the Bankruptcy Appellate Panel.

The Ninth Circuit's decision in *Rainbow Magazine* did not turn on an exception to the law of the case doctrine. The Bankruptcy Appellate Panel's mandate issued to the bankruptcy court left open the possibility of sanctions for the signing of the fraudulent statement of affairs *if* the bank-

ruptcy court determined them to be appropriate. Indeed, this ruling was interlocutory because it did not finally determine that sanctions were appropriate, rather it decided that sanctions could be imposed if appropriate, which required the bankruptcy court to take further steps. Since the Bankruptcy Appellate Panel's ruling was "interlocutory," I must agree with the Ninth Circuit in *Rainbow Magazine* that "[i]t would be a convoluted procedure not to allow the bankruptcy court to apply subsequent controlling precedent of this circuit in such a circumstance." *Id.* Consequently, on remand with instructions to "determine", a discretionary act, subsequent controlling precedent must be considered. *See Hegler v. Borg,* 50 F.3d 1472 (9th Cir.1995).

Unfortunately, those are not the circumstances in the instant case. Here, the Bankruptcy Appellate Panel's dispositive Memorandum provided the following mandate upon remand:

> We hold that the bankruptcy court erred in applying *Ward* as controlling law in this circuit. The record indicates that American Express provided an adequate record to support entry of a default judgment based on actual fraud under Section 523(a)(2)(A). The bankruptcy court's decision is hereby REVERSED, and the case is remanded to the bankruptcy court with instructions to enter default judgment in favor of American Express, holding the debt of $24,812.84 nondischargeable under Section 523(a)(2)(A).

Memorandum at 6. Clearly, the Bankruptcy Appellate Panel's mandate left nothing to be determined. In fact, this was a final judgment with directions to enter default judgment for the Appellant. It was not further appealed. The Bankruptcy Appellate Panel decision viewed the factual allegations in the complaint as adequate to warrant entry of the default judgment so the bankruptcy court was obligated to follow the mandate "whether correct or in error." *Colville Confederated Tribes*

*v. Walton,* 752 F.2d 397, 404 (9th Cir.1985). "[U]pon receiving a mandate from an appellate court, the [bankruptcy] court 'cannot vary it or examine it for any other purpose than execution.'" *United States v. Cote,* 51 F.3d 178, 181 (9th Cir.1995). The unequivocal mandate in this case foreclosed any further consideration by the bankruptcy court.

A prior Bankruptcy Appellate Panel reached the same conclusion in *In re Black,* 222 B.R. 896 (9th Cir. BAP 1998), even though the Bankruptcy Appellate Panel's dispositive Memorandum contained an arguably more ambiguous mandate. The mandate stated:

> Despite the debtor's default and total non-participation, the trial court denied AT & T a default judgment. The trial court applied an incorrect legal standard and, therefore, erred when it denied AT & T a default judgment because AT & T did not show reliance. AT & T has provided adequate evidence to show that it is entitled to a default judgment. Therefore, we REVERSE the trial court's default judgment and REMAND for entry of judgment in accordance herewith.

*In re Black* at 898.

In *In re Black,* the bankruptcy court determined that this mandate encompassed only the issue of whether AT & T had to prove reliance upon Black's alleged fraud. Therefore, the bankruptcy court concluded that it had discretion to rule on other required elements under Section 523(a)(2)(A) and scheduled a prove-up hearing. The bankruptcy court then entered default judgment in favor of Black for "failure to prosecute" because AT & T did not present any witnesses. Again, AT & T appealed.

In reversing the bankruptcy court on second appeal, the Bankruptcy Appellate Panel determined that the prior Panel's memorandum made it clear that the Panel: (1) reviewed the issues necessary to enter a default judgment in favor of AT & T; (2)

held that default judgment be entered in favor of AT & T; and (3) remanded the case to the bankruptcy court for the purpose of entering a default judgment in favor of AT & T. Furthermore, because the bankruptcy court had already denied AT & T's motion for default judgment on the pleadings, it did not have discretion to ignore the Bankruptcy Appellate Panel's review of the pleading and hold a prove-up hearing after the fact by interpreting the mandate as being limited to the reliance issue.

The majority attempts to distinguish *In re Black* from the instant case on the grounds that *Eashai* and *Anastas* were already the controlling law of the circuit when *In re Black* was decided and thus not intervening law. Indeed, this is true. However, this distinguishing characteristic fails to recognize that this appeal does not stem from the application of *Eashai* and *Anastas,* but rather from the failure of the bankruptcy court to follow the mandate. Consequently, under these circumstances, we are to review the bankruptcy court's actions in relation to the issued mandate, not in its application of intervening law. Arguments in support of departure from the mandate must be addressed to the appellate court, but the lower court must still carry out the mandate. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Donohoe v. Consolidated Operating and Prod. Corp.,* 30 F.3d 907 (7th Cir.1994).

The majority also attempts to distinguish *In re Black* from the instant case on the grounds that the record in *In re Black* already contained evidence establishing the *Dougherty* factors while the instant case did not. Again, the majority fails to recognize that the correctness of the prior Bankruptcy Appellate Panel's decision is not an issue in this appeal. It was final. The bankruptcy court was obligated to carry out the mandate "whether correct or in error." *Colville Confederated Tribes v. Walton,* 752 F.2d 397, 404 (9th Cir.1985).

Nevertheless, a review of the prior Panel's memorandum in this case makes it clear that the Panel: (1) reviewed the issues necessary to enter a default judgment in favor of American Express; (2) held that default judgment be entered in favor of American Express holding the debt of $24,812.84 nondischargeable under Section 523(a)(2)(A); and (3) remanded the case to the bankruptcy court for the purpose of entering a default judgment in favor of American Express.

In sum, the mandate here was a final order because it finally determined the cause of action and was not further appealed. It left no discretion to the trial court nor did it call for further proceedings. All that remained was for the lower court to carry the judgment into execution. To reach a different conclusion would imply that a mandate can never be final, regardless of its wording, leaving a writ of mandamus as the only tool of enforcement for the appellate court. I am not prepared to reach that conclusion.

### III. CONCLUSION

The Bankruptcy Appellate Panel reversed and remanded the matter to the bankruptcy court with express direction for entry of default judgment in favor of American Express. The bankruptcy court's refusal to comply with the dispositive Memorandum and mandate was in direct conflict with the decision of the Panel. The bankruptcy court exceeded the mandate by requiring American Express to produce competent witnesses and admissible evidence to support a prima facie case, and by entering a default judgment in favor of Fraschilla. Therefore, I would reverse the bankruptcy court's judgment in favor of Fraschilla and remand with instructions to enter default judgment in favor of American Express.