924 F.2d 805
 136 L.R.R.M. (BNA) 2273, 59 USLW 2479,
117 Lab.Cas. P 10,513,
32 Fed. R. Evid. Serv. 140
 John L. DEAN, Plaintiff-Appellant,
v.
TRANS WORLD AIRLINES, INC., and Air Line Pilots Association,
International, Defendants-Appellees.
John L. DEAN, Plaintiff-Appellee,
v.
TRANS WORLD AIRLINES, INC., and Air Line Pilots Association,
International, Defendants-Appellants.
 Nos. 85-4384, 85-4399 and 85-4432.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1987.
Opinion Filed Jan. 12, 1990.
Order Granting Rehearing Filed June 28, 1990.
Reargued and Submitted Aug. 21, 1990.
Decided Jan. 22, 1991.
 
 Jocelyn J. Lyman, Law, Hemstad, Lyman & Daniel, Olympia, Wash., for plaintiff-appellant-cross-appellee.
 Gary Green and Eugene B. Granof, Air Line Pilots Ass'n, Washington, D.C., Ronald T. Schaps, Bogle & Gates, Seattle, Wash., for defendants-appellees-cross-appellants.
 Appeal from the United States District Court for the Western District of Washington.
 Before WALLACE and POOLE, Circuit Judges, and KEEP,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 The Air Line Pilots Association (ALPA) appeals from a judgment entered following a jury verdict against it on pilot Dean's wrongful discharge claim. ALPA argues that the district judge erred by denying its motion for a judgment notwithstanding the verdict, and by excluding evidence relating to Dean's previous misdemeanor conviction. Former employer Trans World Airlines (TWA) joins ALPA's appeal. Dean cross-appeals, challenging the district court's entry of partial summary judgment in favor of ALPA and TWA, which eliminated his constitutional challenge and limited his remedies to back pay prior to May 1982. The district court exercised jurisdiction under 28 U.S.C. Sec. 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291. We affirm in part, reverse in part, and remand.
 
 
 2
 * Dean became a pilot for TWA and a member of ALPA in 1966. Dissatisfied with ALPA's representation, he resigned his union membership in February 1973. In 1975, TWA and ALPA negotiated a collective bargaining agreement, which included an agency shop clause requiring nonunion pilots to pay ALPA fees equal to the amount of dues paid by union members. Under this contract, ALPA assessed nonunion fees on a yearly basis, and charged interest on unpaid yearly balances.
 
 
 3
 Dean immediately protested the assessment authorized by the agreement, contending that ALPA's billing procedures violated the first amendment by forcing him to subsidize ALPA's ideological activities. He wrote ALPA letters over the next several months, demanding an accounting and a refund of any money used to defray expenses unrelated to collective bargaining. Dean received little meaningful response to his complaints. In December 1976, he reduced his payments to ALPA from $36 per month to $10 per month. Dean explained this reduction by letters accompanying the payments reiterating his objections to the fees and requesting an accounting.
 
 
 4
 The collective bargaining agreement provides that ALPA may request the discharge of any employee who is 60 days delinquent in his service charges. Section 3-B establishes a two-step discharge process. First, the union must send a registered letter to the employee, demanding payment within 15 days upon pain of discharge (step one letter). Second, the union must send a registered letter to TWA, formally requesting discharge, and certifying that the employee failed to tender the delinquency within 15 days of receipt of the step one letter (step two letter). A copy of this letter must also be sent to the employee, return receipt requested.
 
 
 5
 In early May 1977, ALPA treasurer Magee wrote Dean, advising him that the agency shop fees were legal, and that his failure to pay overdue fees would force ALPA to request his discharge. Dean responded by reiterating his protests, and again paid only part of the fees assessed. Thereafter, on June 29, 1977, Magee sent Dean a step one letter. Davis, the manager of the condominium facility where Dean lived, accepted the letter in Dean's absence. ALPA made no inquiry into whether Dean actually received the letter despite the fact that the return receipt bore Davis's signature.
 
 
 6
 On July 29, ALPA sent TWA and Dean the step two letter, certifying Dean's delinquency and requesting his discharge. TWA vice president Rhodes wrote to Dean on August 3, warning him that he would be discharged on August 11 if the delinquency was not remedied. Rhodes terminated Dean's employment by letter on August 12. Dean later testified that he did not receive any of these letters until August 16 because he was out of town during most of late July and early August. He learned of his discharge on August 12 when he called TWA to check his flight schedule.
 
 
 7
 After hearing of his discharge, Dean sent a mailgram to Hilly, TWA's Vice President for Labor Relations. Dean explained his position regarding the discharge, including his lack of notice, and requested all representation and relief due him under the contract. In reply, Hilly advised Dean to send ALPA a check for the delinquency. Dean complied, but ALPA refused to accept the payment.
 
 
 8
 On August 18, Dean sent Hilly another objection to the discharge. He included copies of the postal receipts to verify his claim that he had not received notice as required by the contract. Hilly responded 5 days later by denying the protest as untimely, reasoning that Dean had not filed the protest within 5 days of receipt of the step two letter, as required by section 3-B. Hilly alternatively found that Dean had offered no evidence that ALPA had violated the procedures established by the collective bargaining agreement. Hilly also refused Dean's request for interim reinstatement, concluding that this relief was unavailable because Dean's discharge had preceded his protest.
 
 
 9
 On July 28, 1979, Dean filed a complaint in district court, alleging that TWA and ALPA had breached the collective bargaining agreement, by failing to comply with the discharge procedures established by section 3-B. As an alternative ground for relief, Dean alleged that the agency shop agreement violated the Railway Labor Act and the United States Constitution because it forced him to subsidize the union's political activities.
 
 
 10
 The district judge granted partial summary judgment in favor of Dean on the statutory and constitutional claims, and ordered TWA to reinstate him. This ruling was reversed on appeal. Dean v. Trans World Airlines, 708 F.2d 486 (9th Cir.) (Dean I ), cert. denied, 464 U.S. 995, 104 S.Ct. 490, 78 L.Ed.2d 685 (1983). On remand, the district court granted summary judgment in favor of ALPA and TWA on the statutory and constitutional claims. The district judge also ruled that Dean's remedies would be limited to recovery of back pay prior to May 26, 1982. The case then proceeded to trial on the contractual claim. After a 10-day trial, the jury found against ALPA and awarded Dean $110,000 damages. The jury absolved TWA of liability.
 
 
 11
 All parties appealed. We initially reversed, holding:
 
 
 12
 The jury's finding that pursuit of Dean's contractual remedies would have been wholly futile is not supported by the evidence. The denial of defendants' motion for JNOV was therefore error. The judgment of the district court is reversed and the court is directed to enter judgment for the defendants.
 
 
 13
 We subsequently granted a petition for rehearing and heard oral argument. We vacate our prior opinion filed January 12, 1990.
 
 II
 
 14
 Dean first argues that Chicago Teachers Union v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986) (Hudson ), decided after the panel's ruling in Dean I, requires reversal of the summary judgment on his constitutional and statutory claims. TWA and ALPA respond that Hudson is not retroactive, but that even if applied to this case, Hudson does not undermine our reasoning in Dean I. They further argue that Dean's challenge is foreclosed by law of the case. We review de novo the district court's entry of summary judgment. Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989) (Kruso ), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).
 
 A.
 
 15
 Although agency shop agreements are not unconstitutional, the Supreme Court has long held that unions may not force nonmembers to support the union's ideological and political causes. International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) (decided under Railway Labor Act); Brotherhood of Railway and S.S. Clerks v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963) (same); Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) (Abood ) (concluding that forced subsidization of union's political activities is unconstitutional). In Hudson, the Court for the first time considered a challenge to a union's fee collection procedures, rather than to the fees themselves. The Court concluded that before collecting fees through an agency shop agreement, a union must adequately explain the basis for the fee, and provide a reasonably prompt opportunity to challenge it before an impartial decisionmaker. Hudson, 475 U.S. at 310, 106 S.Ct. at 1077. The Court also held that unions must keep dissenting employees' fees in an escrow account pending resolution of any challenge. Id.
 
 
 16
 Before considering the effect of Hudson on our ruling in Dean I, we must first address ALPA's argument that Hudson is not retroactive. Under Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), a decision must be applied retroactively unless, among other things, "the decision ... establish[es] a new principle of law, either by overruling clear past precedent ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed." Id. at 106, 92 S.Ct. at 355. In Lowary v. Lexington Local Board of Education, 903 F.2d 422 (6th Cir.1990), the Sixth Circuit considered the retroactivity of Hudson in the context of an employee's suit for a rebate of union fees collected the year before Hudson was decided. The court concluded that the procedures created by Hudson were not sufficiently novel or unexpected to justify solely prospective application. Id. at 429.
 
 
 17
 We agree with the Sixth Circuit that Hudson was not a "clear break" with past precedent. Id. at 427. The Supreme Court based Hudson on prior agency shop decisions. See Hudson, 475 U.S. at 301-10, 106 S.Ct. at 1073-78. Language in these cases foreshadowed the need for procedures to protect dissenting employees' first amendment rights. See Abood, 431 U.S. at 237, 97 S.Ct. at 1800; id. at 244, 97 S.Ct. at 1804 (Stevens, J., concurring). We therefore agree with the Sixth Circuit that Hudson should be applied retroactively. See also Kidwell v. Transportation Communications International Union, 731 F.Supp. 192, 201 (D.Md.1990) (stating that because Hudson was foreshadowed, the decision "does not work a hardship that could not have been reasonably foreseen"); Gilpin v. American Federation of State, County, and Municipal Employees, 643 F.Supp. 733, 738 (C.D.Ill.1986) (procedural requirements were sufficiently established prior to Hudson to require union to adhere to them), later proceeding, 875 F.2d 1310 (7th Cir.1989).
 
 B.
 
 18
 We next consider whether Hudson requires reversal of our position taken in Dean I. In Dean I, we relied on Street and Allen to conclude that "an individual should not be permitted unilaterally to decide to reduce ... dues payment." Dean I, 708 F.2d at 488. We reasoned that regardless of Dean's constitutional challenge, his discharge was justified because he did not seek judicial relief before reducing his dues payment. Id. Dean argues that Hudson undercuts this reasoning.
 
 
 19
 Hudson establishes "constitutional requirements for the Union's collection of agency fees." Hudson, 475 U.S. at 310, 106 S.Ct. at 1078. Without these procedures in place, the union has no right to enforce an agency shop agreement to collect fees for use in any union activity beyond collective bargaining. See Tierney v. City of Toledo, 824 F.2d 1497, 1504 (6th Cir.1987) (no duty to pay dues until plan complies with Hudson ). We therefore conclude that ALPA's failure to institute Hudson procedures can serve as a justification for Dean's unilateral reduction of fees. Because ALPA could not constitutionally collect the fees, TWA could not fire Dean for his refusal to pay.
 
 
 20
 ALPA points out that the Supreme Court did not expressly sanction Dean's self-help remedy by establishing new procedural safeguards. It argues that Dean should have sought a judicial injunction against collection of the dues, rather than reducing payment and challenging the dues after the discharge. This argument is inconsistent with the reasoning in Hudson. Hudson stated that "a remedy which merely offers dissenters the possibility of a rebate does not avoid the risk that dissenters' funds may be used temporarily for an improper purpose." Hudson, 475 U.S. at 305, 106 S.Ct. at 1075. ALPA's argument that Dean should have continued paying dues while seeking judicial redress is inconsistent with the Supreme Court's rejection of any type of rebate remedy.C.
 
 
 21
 TWA and ALPA also argue that Dean I is law of the case, and cannot be relitigated on this appeal. Under the "law of the case" doctrine, one panel of an appellate court will not reconsider questions which another panel has decided on a prior appeal in the same case. Kimball v. Callahan, 590 F.2d 768, 771 (9th Cir.), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). This self-imposed restriction enables appellate courts to decide appeals expeditiously, because it prevents repeated consideration of the same issues. Id. at 771, quoting Lehrman v. Gulf Oil Corp., 500 F.2d 659, 662 (5th Cir.1974), cert. denied, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975). However, the prudential doctrine of law of the case does not bar reconsideration of an issue when " 'controlling authority has since made a contrary decision of the law applicable to such issues.' " Id. at 772, quoting White v. Murtha, 377 F.2d 428, 431-32 (5th Cir.1967).
 
 
 22
 The doctrine of law of the case does not bar our reconsideration of Dean I. The Supreme Court's decision in Hudson is intervening authority which we are obligated to follow. Therefore, this situation falls within one of the recognized exceptions justifying a second review. We reverse the partial summary judgment.
 
 III
 
 23
 We next consider the issues raised by ALPA. ALPA argues that the district judge should have granted its motion for judgment notwithstanding the verdict (JNOV) on Dean's wrongful discharge claim. ALPA argues in the alternative that it was entitled to a new trial because the district judge erroneously excluded impeachment evidence.
 
 A.
 
 24
 We review de novo the district court's denial of a motion for JNOV. Wilcox v. First Interstate Bank of Oregon, N.A., 815 F.2d 522, 524 (9th Cir.1987). JNOV is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, could not reasonably support the verdict. Locricchio v. Legal Services Corp., 833 F.2d 1352, 1356 (9th Cir.1987).
 
 
 25
 ALPA argues that Dean failed to exhaust administrative remedies prior to bringing suit. See Seay v. McDonnell Douglas Corp., 427 F.2d 996, 1001 (9th Cir.1970) (Seay ) (employees who have a dispute with a union generally must attempt to exhaust exclusive grievance and arbitration procedures). The 1976 collective bargaining agreement established arbitration procedures for employees discharged for failure to pay union fees. Section 3-B creates a two-tier grievance procedure. First, "within five days of receipt of notice" of the discharge, the employee must complain in writing to the Vice President of the Company. Section 3-B(D)(1). The Vice President must respond to this complaint within 5 days, and forward his decision to an union official designated to receive it. Following that decision, either the employee or the union has 10 days to appeal. Section 3-B(D)(2). The employee shall not be discharged during the period in which this protest is being handled. Section 3-B(E).
 
 
 26
 Dean concedes that he did not follow the procedures established by section 3-B. After Vice President Hilly rejected Dean's protest, Dean filed this action in federal court, rather than appealing to a neutral arbitrator. However, the jury found by special interrogatory that Dean's failure to invoke the second step of the grievance procedure was excused, because it would have been futile for him to pursue this remedy. TWA argues that the evidence presented at trial could not reasonably support this finding.
 
 
 27
 Repeated complaints to the union suffice to excuse exhaustion when the union controls grievance procedures. Glover v. St. Louis-S.F. Railway Co., 393 U.S. 324, 330-31, 89 S.Ct. 548, 551-52, 21 L.Ed.2d 519 (1969) (Glover ). In this situation, forcing an employee to file a grievance with the union "would only serve to prolong the [employee's] deprivation of rights." Id. at 331, 89 S.Ct. at 552. We applied Glover in Seay. There, employees challenged the collection of fees under an agency shop agreement. The court rejected the union's exhaustion argument, finding that the employees had made numerous complaints about the fees that had been ignored. The court stated: "Their objections went unheeded. An employee is not required to do more than that." Seay, 427 F.2d at 1001.
 
 
 28
 The record supports the finding that the union and TWA consistently ignored Dean's complaints. Dean wrote 11 letters over a period of 17 months, protesting the union fees and demanding an accounting. He received no meaningful response. After his discharge, Dean advised TWA four separate times that he had not received notice as required by the contract. His complaints received only cursory consideration; Hilly told Dean that his grievance could not be considered because Dean had failed to appeal within five days.
 
 
 29
 The grievance procedure was wholly controlled by ALPA and TWA. Section 3-B provides for initial review of the employees' grievance by TWA's Vice President. Appeal of this decision is decided by a referee "agreed upon by the Company and the Association." Section 3-B(D)(2). At the discretion of either the company or ALPA, the national mediation board may be asked to select an arbitrator, but the employee has no right to request this selection. Id. Therefore, the contract creates a "remedy administered by the union [and] by the company ... to pass on claims by the very employees whose rights they have been charged with neglecting and betraying." Glover, 393 U.S. at 330-31, 89 S.Ct. at 551-52; see also Hudson, 475 U.S. at 308-09, 106 S.Ct. at 1076-77 (review by the union-selected arbitrator does not satisfy requirement of an "impartial decisionmaker"); Williams v. Pacific Maritime Association, 617 F.2d 1321, 1328-29 n. 13 (9th Cir.1980) (employees should not be required to submit their controversy to persons chosen by the group being criticized), cert. denied 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981).
 
 
 30
 There is also evidence that ALPA and TWA had repudiated the grievance procedures. ALPA never designated a union official to receive Hilly's decision, as required by section 3-B(D), and TWA refused to reinstate Dean, although interim reinstatement was required by section 3-B(E). The jury could have considered ALPA and TWA's noncompliance with the section 3-B procedures as evidence that it would have been futile for Dean to pursue these remedies further.
 
 
 31
 Evidence in the record supports the finding that Dean's repeated complaints went unheeded, that the union controlled grievance procedures, and that Dean's initial attempts to pursue administrative remedies were unsuccessful. Under controlling precedent, this is sufficient to excuse exhaustion. ALPA's motion for JNOV was properly denied.
 
 B.
 
 32
 ALPA also argues that the judge erred by excluding evidence of Dean's misdemeanor conviction for failure to file a tax return. Under Fed.R.Evid. 609(a)(2), impeachment evidence of a prior criminal conviction involving "dishonesty or false statement" is automatically admissible, and the rule affords the trial court no discretion to weigh its prejudicial effect. United States v. Glenn, 667 F.2d 1269, 1272 (9th Cir.1982); United States v. Leyva, 659 F.2d 118, 121 (9th Cir.1981), cert. denied, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). The judge's interpretation of Rule 609 is a question of law, which we review de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 33
 We agree with other courts that a conviction for failure to file a tax return involves dishonesty within the meaning of Rule 609. See United States v. Gellman, 677 F.2d 65, 66 (11th Cir.1982); Zukowski v. Dunton, 650 F.2d 30, 34 (4th Cir.1981); United States v. Klein, 438 F.Supp. 485 (S.D.N.Y.1977). Dean argues that we should not follow these cases, because his conviction did not rest on a complete failure to file a tax return, but instead on the filing of an incomplete return. Dean's deliberate omission of his true income surely "involve[s] some element of misrepresentation," however, and thus qualifies as a dishonest statement under Rule 609. United States v. Ortega, 561 F.2d 803, 806 (9th Cir.1977).
 
 
 34
 Dean also contends that his filing of an incomplete return should not be viewed as a crime of dishonesty because he filed that return as a protest. Dean's justification for filing an incomplete return, however, does not transform his inaccurate return into an accurate one. A jury convicted Dean after finding that he signed a tax return that omitted his income. Because the return included deliberate false statements, we conclude that the conviction should have been admitted under Rule 609.
 
 
 35
 Although the district judge erred by excluding impeachment evidence automatically admissible under Rule 609, we need not reverse the denial of a new trial motion unless the error more probably than not tainted the verdict. Haddad v. Lockheed California Corp., 720 F.2d 1454, 1459 (9th Cir.1983). Dean argues that the error did not affect the verdict because the judge allowed TWA to introduce the tax filing that was the basis for the misdemeanor conviction. Cf. Burgess v. Premier Corp., 727 F.2d 826, 834 (9th Cir.1984) (not abuse of discretion to exclude evidence because judge permitted full exploration of the subject).
 
 
 36
 Dean's contractual claim was premised on ALPA's failure to provide notice of his discharge as required by section 3-B. His testimony that he never received the step one letter was crucial to establishing his lack of notice. Although ALPA was permitted to impeach Dean by introducing his prior inaccurate tax return, the effectiveness of this cross-examination was limited by Dean's repeated claims that he had done nothing improper. Introduction of the conviction could have effectively rebutted this claim. Given the importance of Dean's testimony, and of the notice issue itself, as well as the capacity of the prior conviction to damage Dean's credibility, we conclude that the exclusion was not harmless error. ALPA's motion for a new trial should have been granted.
 
 IV
 
 37
 Dean finally challenges the limits imposed by the district judge on his remedies. The district judge determined that Dean was ineligible for reinstatement, and could only recover back pay for the period prior to May 1982, and granted partial summary judgment for ALPA on these points. We review this decision de novo. Kruso, 872 F.2d at 1421.
 
 
 38
 On May 26, 1982, Dean was reinstated by court order pursuant to the initial summary judgment in his favor on the constitutional claim. In December 1982, before the reinstatement order was reversed in Dean I, Dean was discharged because he was unable to report for duty due to incarceration for his misdemeanor tax conviction. The district court found that this discharge served as an independent intervening event "entirely unrelated to any issue ... in the case at bar" that cut off Dean's damage claims and foreclosed his reinstatement.
 
 
 39
 The district court properly limited Dean's remedies. If Dean prevails at trial, he is entitled only to those damages that were caused by his wrongful discharge. See Golden State Bottling Co. v. NLRB, 414 U.S. 168, 189, 94 S.Ct. 414, 427, 38 L.Ed.2d 388 (1973) (remedies should place employee in position he would have been "but for [the] wrongful discharge"); NLRB v. Fort Vancouver Plywood Co., 604 F.2d 596, 602 (9th Cir.1979) (damage award should reflect the fact that jobs might have been eliminated for reasons unrelated to lawsuit), cert. denied, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). Dean suffered no damages from the 1977 discharge after the time he was reinstated by court order. His argument that the later discharge was unjustified is irrelevant; that discharge is not a subject of this lawsuit.
 
 V
 
 40
 TWA raises two independent issues on this appeal. TWA first argues Dean is not entitled to any relief against it for breach of the collective bargaining agreement. The jury found in favor of TWA on this claim. Dean has not alleged any errors that could implicate the accuracy of that verdict. There is, therefore, no reason to overturn the jury's finding that TWA was not liable to Dean for breach of contract.
 
 
 41
 TWA also argues that we should hold in its favor on the statutory and constitutional challenges. It claims that this action involves a dispute solely between Dean and ALPA. This argument was not briefed, and not considered by the district judge. We will not consider the issue. TWA can make this argument to the district judge on remand.
 
 
 42
 The district court's order limiting Dean's remedies is affirmed. The jury verdict in favor of TWA is affirmed. In all other respects, the judgment is reversed and remanded for further proceedings.
 
 
 43
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 Honorable Judith N. Keep, United States District Judge, Southern District of California, sitting by designation