**In re John H. HALEY, Arkansas Bar # 55014.**

United States District Court, E.D. Arkansas, Western Division.

July 20, 1999.

## ORDER

SUSAN WEBBER WRIGHT, Chief Judge.

According to the record in *United States of America v. John H. Haley,* LR–CR–98–29, on February 20, 1998, the Independent Counsel filed a one-count misdemeanor information, charging Mr. Haley with the following conduct:

> From in or about June, 1990 to December, 1990, the Defendant JOHN H. HALEY, aided and abetted others in the willful failure to supply information to the Internal Revenue Service in that he assisted in the presentation of an Asset Transfer Agreement, and an Order Approving Disclosure Statement and Confirming Plan of Reorganization, copies of which he knew were provided to the Internal Revenue Service, which failed to supply complete and accurate information, to wit: They failed to completely and accurately describe the history and ownership of Planned Cable Systems, a loan agreement with Fleet National Bank, and an Agreement to sell Plantation Cable to American Cable Systems, in violation of 26 U.S.C. Section 7203 and 18 U.S.C. Section 2.

*See* docket entry no. 1.

When Mr. Haley pled guilty to the information on February 20, 1998, he stated that the charge was correct, that he participated in providing the documents, that those documents did not supply complete and accurate information to the Internal Revenue Service, and that he knew the documents were not complete and were inaccurate. Mr. Haley further stated he aided and abetted others whom he knew were intending to supply incomplete information. *See* Change of Plea Proceedings, Tr. at 15–17 (docket entry no. 4). On August 24, 1998, the Judgment was filed in Mr. Haley's criminal case.

The Court has considered the misdemeanor information, the guilty plea, and letters from counsel in which counsel for Mr. Haley stated facts which the government did not dispute The Court concludes that Mr. Haley's conduct violates Rule 8.4 of the Model Rules of Professional Conduct as amended by the Arkansas Supreme Court. The Eastern District of Arkansas has adopted these Rules as the standard of conduct for attorneys admitted to practice before this Court.

Rule 8.4 states, in pertinent part, as follows:

> It is professional misconduct for a lawyer to:
>
> (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

The Court finds that Mr. Haley should be reprimanded for this misconduct. This Order of reprimand will be entered in the files of the Court and shall be considered in the imposition of appropriate sanctions in the future event that Mr. Haley is found to have violated the Rules of Professional Conduct. Also, this reprimand will be filed as a public record with the Clerk of the Court, who will notify the National Discipline Bank operated by the American Bar Association of this Order.

THEREFORE, it is the decision and Order of the Eastern District of Arkansas that John H. Haley be, and hereby is, reprimanded.

Judge G. Thomas Eisele abstains from this decision and Order. Judge George Howard, Jr. dissents by separate opinion.

## DISSENT

GEORGE HOWARD, Jr., District Judge.

Today the Court deviates from our usual procedure of referring disciplinary matters to the Arkansas Supreme Court's Committee on Professional Conduct and reprimands an attorney who has been convicted of a crime in federal court. Because this action is neither appropriate nor consistent with the Court's actions in similar situations, I respectfully dissent.

I recognize that "every court has inherent authority to disbar or discipline attorneys for unprofessional conduct ..." *Starr v. Mandanici,* 152 F.3d 741, 751 (8th Cir. 1998) (Beam, J. concurring in part). "Disciplinary procedures are viewed as a function of maintaining the integrity of the bar and avoiding the appearance of impropriety. . . . Thus, discipline of convicted attorneys is seen as both 'a catharsis for the profession and a prophylactic for the public.'" *In re Stoner,* 507 F.Supp. 490, 492 (N.D.Ga.1981) (citations omitted) (suspension of attorney from practice prior to exhaustion of appeals did not deny attorney due process). "The purpose of disciplinary actions is to protect the public and the administration of justice from lawyers who have not discharged their professional duties to clients, the public, the legal system, and the legal profession." *Neal v. Hollingsworth,* 338 Ark. 251, ——, 992 S.W.2d 771, 776 (1999)

I also recognize that federal district courts have power independent of state courts to discipline attorneys admitted to practice before the federal bench. *See Theard v. United States,* 354 U.S. 278, 281–82, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); *see also In re Attorney Discipline Matter,* 98 F.3d 1082, 1087 (8th Cir.1996) ("Each individual court has autonomous power to discipline members of its bar.") A state court disciplinary action is not conclusively binding on the federal court, however, deference is given to state court findings in disciplinary actions. *In re Matter of Suspension to Practice of*

*Randall,* 640 F.2d 898, 901 (8th Cir.1981). Despite this inherent authority, we have followed the practice of referring matters where an attorney has been convicted to the Arkansas Supreme Court's Committee on Professional Conduct in accordance with the Rule discussed below. I see no reason to depart from that practice in this instance.

The Court has adopted the Model Federal Rules of Disciplinary Enforcement which sets forth certain rules governing the supervision and conduct of attorneys practicing before the Court. *See Starr v. Mandanici,* 152 F.3d 741, 742 n.1 (8th Cir.1998). Rule I provides as follows:

A. Upon the filing with this Court of a certified copy of a judgment of conviction demonstrating that any attorney admitted to practice before the Court has been convicted in any Court of the United States ... of a serious crime as hereinafter defined, the Court shall enter an order immediately suspending that attorney, whether the conviction resulted from a plea of guilty, or nolo contendere or from a verdict after the trial or otherwise, and regardless of the pendency of any appeal, until final disposition of a disciplinary proceeding to be commenced upon such conviction. A copy of such order shall immediately be served upon the attorney. Upon good cause shown, the Court may set aside such order when it appears in the interest of justice to do so.

B. The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime in the jurisdiction where the judgment was entered, involves false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft or any attempt or a conspiracy or solicitation of another to commit a "serious crime."

\*　　\*　　\*　　\*　　\*　　\*

D. Upon the filing of a certified copy of a judgment of conviction of an attorney for a serious crime, the Court shall, in addition to suspending that attorney in accordance with the provisions of this Rule, also refer the matter to counsel for the institution of a disciplinary proceeding before the Court in which the sole issue to be determined shall be the extent of the final discipline to be imposed as a result of the conduct resulting in the conviction, ...

E. Upon the filing of a certified copy of a judgment of conviction of an attorney for a crime not constituting a "serious crime," the Court may refer the matter to counsel for whatever action counsel may deem warranted, including the institution of a disciplinary proceeding before the Court; provided, however, that the Court may in its discretion make no reference with respect to convictions for minor offenses.

Rule X provides that "[w]henever counsel is to be appointed pursuant to these Rules to investigate allegations of misconduct or prosecute disciplinary proceedings ... the Court shall appoint as counsel the disciplinary agency of the Supreme Court of Arkansas ... If ... such appointment is clearly inappropriate, this Court shall appoint as counsel one or more members of the Bar of this Court to investigate allegations of misconduct or to prosecute disciplinary proceedings under these Rules ..."

Mr. Haley pleaded guilty to the following one-count information filed in open court on February 20, 1998:

From in or about June, 1990 to December, 1990, the Defendant, JOHN H. HALEY, aided and abetted others in the willful failure to supply information to the Internal Revenue Service in that he assisted in the presentation of an Asset Transfer Agreement, and an Order Approving Disclosure Statement and Confirming Plan of Reorganization, copies of which he knew were provided to the Internal Revenue Service, which failed to supply complete and accurate information, to wit: They failed to completely

and accurately describe the history and ownership of Planned Cable Systems, a loan agreement with Fleet National Bank, and an Agreement to sell Plantation Cable to American Cable Systems, in violation of 26 U.S.C. Section 7203 and 18 U.S.C. Section 2.

These statutory provisions to which Mr. Haley entered a guilty plea are set forth below:

**28 U.S.C. § 7203. Willful failure to file return, supply information, or pay tax**

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any record, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall ... by guilty of a misdemeanor....

**18 U.S.C. § 2. Principals**

(A) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

Besides the language of the statutes themselves, the following excerpts of the Plea Agreement filed on February 20, 1998, establish the final results of the plea negotiations:

This Agreement is limited to matters within the jurisdiction of the Independent Counsel, and cannot bind other federal, state, or local prosecuting, administrative, or regulatory authorities except as expressly set forth in this Agreement.

The Defendant will enter a plea of guilty to a one-count Information charging him with a violation of Title 26, U.S.C., Sec. 7203, willful failure to supply information (the "Information").

The Defendant will plead guilty because he is in fact guilty of the charge contained in the Information (copy attached), and will admit to facts that establish his guilt. In pleading guilty, the Defendant admits that he is guilty of a violation of Title 26, U.S.C. Section 7203.

After the filing of the information and plea agreement during the February 20, 1998 plea hearing, the following exchange occurred:

THE COURT: All right. Let me ask Independent Counsel to state the facts in the case on the Information if it were tried and what evidence would be produced at court.

MR. HEATON: I will present these in summary fashion as possible, Your Honor. Given what we heard earlier today, it will be possible to do that in short order.

At trial the government would be prepared to prove that in June, 1987, Mr. Jim Guy Tucker bought stock in a cable TV company called Planned Cable Systems and became a partner by doing so with William Marks, Sr. That corporation, Planned Cable Systems, was a subchapter-C corporation, so its income was subject to corporation income tax. One of the assets of that company was a cable TV system in Plantation, Florida. Mr. Tucker and Mr. Marks wanted to sell that Plantation, Florida cable TV system, and found a buyer for it in August of 1987. They entered into a sales contract to sell it for approximately $15 million dollars. Mr. Tucker then learned from an accounting firm that after selling the system for $15 million dollars, Planned Cable Systems would be subject to approximately $4 million dollars in corporate income tax. Mr. Tucker's attorney, the defendant—

MR. BOSWELL: [defense counsel]

Excuse me one second, and I apologize for interrupting.

Your Honor, we were present during the earlier presentation as regards to Mr. Haley, and I apologize for the interruption to counsel, but he is prepared to acknowledge his portion of this presentation as is contained in 7203, and I just inquire whether it's

necessary we do a summary in this regard.

MR. HEATON: Your Honor, I think this will be less than five minutes. And the point is that the nature of this Information charge is so different from the earlier charge, I'm afraid we won't have satisfied—

THE COURT: I'm going to let him do to.

MR. BOSWELL: I understand. I'm sorry, Your Honor.

MR. HEATON: Mr. Haley, who was Mr. Tucker's attorney, together with Mr. Tucker, created, and then along with co-defendant at that time, at an earlier time, Bill Marks, executed a scheme to avoid paying the $4 million dollars in corporate income tax that involved engaging in a series of corporate transactions and involved the submission of false and misleading information to a federal bankruptcy court in Texas. The defendant, John Haley, knowingly aided and abetted that fraudulent bankruptcy. He represented Jim Guy Tucker in the confirmation hearing, and he knowingly aided and abetted Mr. Tucker and Mr. Marks in obtaining approval of the bankruptcy court of a prepackaged bankruptcy that was based on a false and incomplete disclosure statement, which he knew to be false and incomplete in that it did not accurately or completely disclose the history of Planned Cable Systems, Incorporated, or its true ownership. Neither did it disclose the relationship to the debtor in the bankruptcy, Landowners Management Systems, it did not disclose the existence of a secured loan agreement with Fleet National Bank, and it did not disclose the existence of a binding and valid sales agreement for the Plantation, Florida cable TV system between Cablevision Management, Incorporated and the buyer in Florida.

Between June of 1990 and December of 1990, the government would be prepared to prove that Cablevision Man-

agement, Incorporated was audited by the Internal Revenue Service for the 1988 tax year. During that audit, Mr. Tucker and Mr. Haley were asked to provide, among other things, information about the bankruptcy and about ownership of the corporate entities involved in the bankruptcy. Mr. Haley aided and abetted Mr. Tucker in providing incomplete and false information in response to the Internal Revenue Service's request by providing the IRS with a false and incomplete Asset Transfer Agreement, and an Order Approving Disclosure Statement and Confirming the Plan of Reorganization.

Those are the facts that we would be prepared to prove at trial.

THE COURT: All right. Mr. Haley, did you hear the allocution of the facts?

THE DEFENDANT: Yes, sir, I did.

THE COURT: Is it correct?

THE DEFENDANT: It would take extensive time to comment upon that, Your Honor. I will say that what is correct is the charge contained in Count 1 of the Information, because I did, indeed, participate in providing documents to the accounting firm which was assisting in the audit. And in that connection, the documents that were presented included the Asset Transfer Agreement and the Order Approving the Disclosure Statement and Confirming Plan of Reorganization. Those documents were—did not supply the complete and accurate information which could have been provided to the Internal Revenue Service agents who were doing the audit. Namely, that the loan agreement with Fleet National Bank was to part of those documents, the accurate history and ownership of Planned Cable Systems was not described therein, and the agreement to sell Plantation Cable to American Cable Systems was not a part of those documents.

THE COURT: All right. And did you do that with knowledge that they were

not complete and they were inaccurate?

THE DEFENDANT: Yes, sir, I did.

THE COURT: And was that, in your aiding an abetting others, were you and the others acting willfully?

THE DEFENDANT: We knew, indeed, that the documents were deficient in the elements that I have described.

THE COURT: And was the purpose of that to keep the Internal Revenue Service from knowing the truth as to the real tax liability surrounding the cable system?

THE DEFENDANT: Your Honor, the plea of guilty is to aiding and abetting the willful failure to provide information to—

THE COURT: Let me rephrase my question. Did you aid and abet others that you knew were willfully failing to supply information?

THE DEFENDANT: Yes, sir, I knew that the information that was supplied was incomplete.

THE COURT: And that's what they were intending to do, was to supply incomplete information. You knew that?

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: You still wish to plead guilty?

THE DEFENDANT: I do, indeed.

THE COURT: Mr. Boswell, do you know of any reason that Mr. Haley should not plead guilty to the Information?

MR. BOSWELL: No, I do not, Your Honor.

THE COURT: All right. It will be the finding of the Court in this case that the defendant is fully competent and capable of entering an informed plea, and that his plea of guilty is a knowing and voluntary plea supported by a independent basis in fact containing each of the essential elements of the offense. His plea is, therefore, accepted and he is adjudged guilty of the offense stated in the Information.

(Transcript of Change of Plea Proceedings, February 20, 1998, pp. 12–17)

On August 20, 1998, Mr. Haley was sentenced. The judgment and commitment filed on August 24, 1998, reflects that Mr. Haley was placed on probation for a term of three years. In addition, he was fined $30,000.00 and was ordered to pay restitution of $40,000.00 on a total loss amount of $3,562,257.00.

I believe that the above recitation concerning the information, the plea agreement, the plea hearing, and sentence demonstrate that the definition of "serious crime" has been met here. Indeed, even the majority has characterized Mr. Haley's misconduct under Model Rule 8.4 as "a criminal act that reflects adversely on the lawyer's honesty [and] trustworthiness" and "involving dishonesty, fraud, deceit, or misrepresentation." It would appear that a conviction under 26 U.S.C. § 7203 is a "serious crime" triggering this Court's usual procedures under Rule I–D. Moreover, a conviction pursuant to 26 U.S.C. § 7203 has been found to be a crime involving dishonesty and some element of misrepresentation. *See, United States v. Wilson,* 985 F.2d 348 (7th Cir.1993); *Dean v. Trans World Airlines, Inc.,* 924 F.2d 805 (9th Cir.1991); *United States v. Lipscomb,* 702 F.2d 1049; *United States v. Yang,* 887 F.Supp. 95 (S.D.N.Y.1995); *United States v. Klein,* 438 F.Supp. 485 (S.D.N.Y.1977).

The majority refrains from characterizing the conviction as a "serious crime" and refers to "letters from counsel in which counsel for Mr. Haley stated facts which the government did not dispute." In a letter dated April 16, 1999, to counsel for Mr. Haley and the OIC, Chief Judge Susan Webber Wright wrote the following:

The Model Federal Rules of Disciplinary Enforcement, which have been adopted by the United States District Courts for the Eastern and Western Districts of Arkansas, provide that upon the filing of a certified copy of a judgment of conviction demonstrating that any attorney ad-

mitted to practice before the Court has been convicted in any court of the United States of a serious crime, the Court shall enter an order immediately suspending that attorney, until final disposition of a disciplinary proceeding to be commenced upon such conviction. *See* Rule I, Model Federal Rules of Disciplinary Enforcement.

The judges of this court are currently reviewing the matter of Mr. John H. Haley and his status under these rules. My fellow judges and I would like to know whether there was any plea agreement that might affect any action this court might take regarding Mr. Haley's standing as an attorney in this court. Please provide at your earliest convenience any information you may have on this matter.[1]

In response to the Court's inquiry, Mr. Boswell communicated in a June 1, 1999 letter as follows:

In response to your inquiry regarding John H. Haley, I have reviewed with my co-counsel their recollection of negotiations that occurred in this case with the Office of Independent Counsel. It is our recollection that the Prosecutors were seeking a misdemeanor to which Haley was willing to enter a plea of guilty. It was made clear by defense counsel that any suggestion of a misdemeanor which would involve fraud or other intentional crimes, which would reflect poorly upon Haley's fitness to practice law, would be rejected.

Finally, the Prosecutors suggested that defense counsel prepare an information, which was done, and which was, with few modifications, accepted. The information charging Haley with aiding and abetting Moore, Stephens, Frost and Company, in providing knowingly incomplete information to the IRS by its very definition did not involve felony or falsehood, dishonesty, or moral turpitude. The misdemeanor charge is statutory mala prohibita.

The misdemeanor occurred eight years ago. Haley, this month, will be 68 years of age. He has been in the active practice of law for 44 years. His career is otherwise unblemished. Suspending his license to practice would serve no purpose, and is not warranted by the circumstances.

In a June 2, 1999 letter, Mr. Ewing of the Office of Independent Counsel (OIC) responded to the Court's inquiry by submitting copies of the information, the plea agreement, transcripts of the guilty plea hearing and sentencing, and the indictment in LR–CR–95–117.

I am not persuaded that the Court should be bound by Mr. Boswell's interpretation of 26 U.S.C. § 7203 or read any inference in the OIC's response especially in light of the recounting of facts by Mr. Heaton who represented the OIC during the February 20, 1998 plea hearing. In addition, while a court is not bound by the provisions of a plea agreement, I find nothing in Mr. Haley's plea agreement that might affect any action the Court would take regarding his standing as an attorney.

In contrast to the Court's action here, the Court's usual procedure involving a misdemeanor conviction in federal court is illustrated by its treatment of Daniel Kroha. Mr. Kroha entered a guilty plea on December 30, 1992, to a misdemeanor count of willful failure to file tax return in violation of 26 U.S.C. § 7203 and was sentenced on December 31, 1992, to three years of probation and fined $2,500.00.[2]

---

1. In a letter dated May 25, 1999, to counsel for Mr. Haley and the OIC, Chief Judge Wright wrote:

   On April 16, 1999, I wrote on behalf of the judges of this court requesting information concerning Mr. Haley's plea agreement that might affect any action this court might take regarding Mr. Haley's standing as an attorney in this court.

   To date, I have not heard from you on this matter. This is to let you know that the court will consider the matter ripe for determination on June 14, 1999. If you have any information you wish the court to consider, please provide it before that date.

2. Due to time constraints imposed by the Court's release of the majority opinion this date, I have been unable to obtain the file for

By order filed on January 11, 1993, the Court, in referring Mr. Kroha to the Arkansas Supreme Court's Committee on Professional Conduct, stated:

The Court having been advised that a Judgment has been filed with the Clerk of this Court demonstrating that Mr. Daniel Kroha, an attorney who had previously been admitted to practice before this Court, has been convicted in the United States District Court for the Eastern District of Arkansas, Magistrate Judge Jerry W. Cavaneau presiding, of a serious crime, as defined in Rule I–B of the Uniform Federal Rules of Disciplinary Enforcement, which have been adopted by this Court, the Court, all judges concurring, concludes, pursuant to Rule I–A, that Mr. Daniel Kroha must be immediately suspended from the practice of law in this Court until final disposition of any disciplinary proceedings commenced as a result of any such conviction.

It is, therefore, ORDERED that Daniel Kroha be, and he is hereby suspended from the practice of law in the United States District Court for the Eastern District of Arkansas until the final disposition of any disciplinary proceedings commenced in connection with the conviction pursuant to Rule I–D.

By July 19, 1993 letter, the Arkansas Supreme Court's Committee on Professional Conduct notified Mr. Kroha that the Committee decided that his conduct was a violation of Model Rule 8.4 which stated in part "that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." As a result, the Committee reprimanded Mr. Kroha for his conduct. In an order filed on January 10, 1994, this Court stated that it had received a certified copy of the decision of the Arkansas Supreme Court's Committee on Professional Conduct and "[g]iven the final decision of the Committee to issue a reprimand, this Court is of the opinion that Mr. Kroha should be reinstated to the practice of law before the United States District Court for the Eastern District of Arkansas."

Similarly, on October 25, 1996, this Court, with all judges concurring, filed orders as to Eugene Fitzhugh and Larry Kuca suspending them from practice due to their guilty pleas to a serious crime pending the result of any disciplinary proceedings. Letters were sent to the Arkansas Supreme Court's Committee on Professional Conduct that same date advising of the Court's suspension of those attorneys and referring the matter for the institution of disciplinary proceedings. Mr. Fitzhugh and Mr. Kuca had each pleaded guilty to a misdemeanor prosecuted by the OIC.[3] Additionally, the Court, with all judges concurring, suspended Jimmie L. Wilson on January 10, 1991, due to his conviction of a serious crime consisting of five federal misdemeanors and referred the matter to the Arkansas Supreme Court's Committee on Professional Conduct for the institution of disciplinary proceedings.[4]

Only in cases of a "minor offense" should the Court exercise its discretion in not referring the matter to the state disciplinary agency. There is no definition for a minor offense. It does not encompass crimes which are not "serious crimes" or the first part of section I–E would have no meaning. It certainly does not, in my mind, encompass the crime to which Mr.

---

*United States v. Kroha*, LR–CR–92–269, from the records center in Ft. Worth, Texas, to provide a more detailed account of what the information charged.

**3.** This Court, with all judges concurring, filed an order on February 17, 1995, suspending Charles Matthews, because of his conviction obtained by the OIC of a serious crime involving two misdemeanors, from practice before this Court until final disposition of any disciplinary proceedings. His file does not contain any other documentation.

**4.** In reflecting on my almost nineteen years on the bench, I cannot recall an instance where the Court *sua sponte* reprimanded an attorney convicted of a crime in federal court.

Haley pled guilty. Indeed, even the Court's finding that Mr. Haley violated Rule 8.4 indicates that the Court considered Mr. Haley's misconduct serious, and could not be characterized as a "minor offense."

Thus, referral would be warranted under Rule I–D or I–E. Not only is referral to the Arkansas Supreme Court's Committee warranted under the Rule, it is the appropriate approach in this instance. The Arkansas Supreme Court has promulgated specific procedures for investigating and adjudicating complaints alleging violation of the Model Rules. *See* Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law ("Procedures"), Section 5. These procedures ensure that an attorney receives due process before any discipline is imposed.

Furthermore, the Arkansas Supreme Court has enumerated specific factors to be considered in determining what sanction should be imposed. *See* Procedures, Section 7. The presence of these standards or factors helps to ensure that discipline is applied consistently and even handedly.

It is true that the Model Federal Rules set forth a procedure to be followed in disciplinary proceedings. For example, Rules IV and V provide for notice and hearing, investigation, and right to a hearing in mitigation. These procedures were not followed in this instance. Nor did the Court thoroughly evaluate and assess any aggravating or mitigating factors, or consider similarly situated attorneys.[5]

Referral to the Arkansas Supreme Court's Committee is warranted for another reason. At the July 7, 1999, hearing on Mr. Haley's motion for termination of probation and/or modifications of the terms of probation before the Honorable Stephen M. Reasoner, Mr. Haley's counsel stated that a complaint had been filed before the Arkansas Supreme Court's Committee on Professional Conduct.[6] The status of that complaint is unclear, however, if it is being investigated, the Court should defer to the Committee to complete its investigation before imposing its own discipline.[7] Should Mr. Haley be disciplined by the Arkansas Supreme Court, he would have the opportunity to challenge our imposition of identical discipline under an established procedure in Rule II of the Model Federal Rules.

In sum, I am not persuaded that Mr. Haley's situation warrants a deviation

5.  I take no position on what discipline, if any, should be imposed. My concern is that we follow our long established practice in referring these type of cases to the appropriate state disciplinary agency.

6.  At the hearing, Mr. Haley's counsel stated: Mr. Haley has—before I get into that, let me state that I now believe, and I can so state as an officer of the court, I sincerely believe this, that Mr. Haley is now facing a complaint before the Committee on Professional Conduct of the Supreme Court of Arkansas. That complaint sets forth in great detail the charges found in Count 3, which were dismissed as to John Haley. THE COURT: Who filed this complaint?

.    .    .    .    .

MR. BOSWELL: James Neal, the director of the Committee on Professional Conduct, Supreme Court committee.

.    .    .    .    .

—seeking Mr. Haley's response to that, we will be responding, we will, in fact, be filing an affidavit that we will give to that committee, and we're happy to put it as a part of this record, setting forth in detail any and all transactions that may have in any way involved John Haley with reference to Count 3 that is so vividly mentioned in this complaint.
(Transcript of July 7, 1999 hearing, pp. 4–5).

7.  All actions by the Committee in connection with the complaint are confidential. Even the filing of a complaint is confidential; however, the confidentiality of the information may be waived. *See* Procedures, Section 4.

from our usual practice in cases where an attorney has been convicted of a crime that at least is arguably serious. I am of the opinion that pursuant to Rule I–D, we should suspend Mr. Haley and refer the matter to the Arkansas Supreme Court's Committee on Professional Conduct for institution of a disciplinary proceeding.